# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LINDA CALVASINA, individually and as Next Friend of PETER CALVASINA, an incapacitated person, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. SA-09-CA-1024-XR |
| WAL-MART REAL ESTATE BUSINESS TRUST, WAL-MART STORES TEXAS, LLC, RHC/SPACEMASTER CORPORATION, MORGAN MARSHALL INDUSTRIES, and LEGGETT & PLATT, INCORPORATED, | § § § § § § § | |
| *Defendants*. | § | |

## ORDER

On this day, the Court considered Defendant Leggett & Platt, Incorporated's ("Leggett") Motion for Summary Judgment (docket no. 54), Plaintiff's Response (docket no. 64), and Leggett's Reply (docket no. 66). Having reviewed the motion and the evidence, the Court grants the motion.

## I. Factual and Procedural Background

On February 24, 2009, Peter Calvasina, an employee working at a Wal-Mart Tire and Lube facility, fell eight feet from the second level of a tire rack and suffered head injuries. Mr. Calvasina was physically incapacitated by the injuries that he sustained in the fall and the subsequent complications that arose during hospitalization.

Mrs. Calvasina, suing individually and on behalf of her husband, alleges that Defendants are jointly and severally liable for her husband's injuries and the hardships that have stemmed therefrom.

1

She bases liability on allegations that the tire rack from which her husband fell was negligently designed, manufactured, installed, marketed, and maintained by the several defendants. Plaintiffs' claim against Leggett, the Defendant seeking summary judgment, alleges that the company that designed, manufactured, and installed the tire rack (Morgan Marshall Industries, Inc. ("MMI")) is a subsidiary of Leggett, and that Leggett is liable as its parent company.

Defendant Leggett seeks summary judgment on the grounds that it is not the "parent" company of MMI. The facts show that the tire rack in question was installed in June 2000. Leggett maintains that it purchased MMI as an asset from the bankrupt RHC/Spacemaster (also a defendant), in July 2003, years after the tire rack in question was designed, manufactured, and installed at the Wal-Mart Tire and Lube. In its original Motion and its Brief in Support of the Motion, Leggett contends that its acquisition of MMI came "free and clear" of any tort liability that might arise from MMI's actions prior to Leggett's purchase. In support of this contention, Leggett relies on the Asset Purchase Agreement ("Purchase Agreement"), the contract created when Leggett purchased MMI in July 2003; the Order of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division ("Bankruptcy Order") authorizing and approving that purchase; and affidavits by company officials.

Plaintiff's Response to the Motion for Summary Judgment asserts that Leggett is liable as a successor-in-interest to MMI. Plaintiff claims that, under applicable Illinois law, the Purchase Agreement evidences that Leggett implicitly assumed MMI's liabilities when it purchased the corporation. Plaintiff also challenges the weight that may given the Bankruptcy Court's order authorizing and approving the purchase and the admissibility of the affidavit of John Lyckman, Associate General Counsel for Leggett.

## II. Legal Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## III. Analysis

Defendant's Motion for Summary Judgment relies on the premise that Leggett was not a "parent" or the successor-in-interest of MMI. Plaintiff's Response concedes the first matter. This

Court will focus on the question "Is Leggett a successor-in-interest to MMI and therefore liable to Plaintiff?" If Leggett is not a successor-in-interest to MMI, then it is not a party from which the Plaintiff can successfully seek damages and summary judgment will be granted.

**A. Choice of Law**

The Court agrees with Plaintiff's Response to the Motion for Summary Judgment that Illinois law should be used to determine whether Leggett is liable as a successor to MMI under the Purchase Agreement. Pls.' Resp. Mot. Summ. J. 5. Federal courts sitting in diversity jurisdiction apply the choice-of-law rule of the forum state. *See Cantu v. Jackson Nat'l Life Ins. Co.*, 579 F.35 434, 437 (5th Cir. 2009). In "contract cases in which the parties have agreed to a valid choice of law clause," Texas courts may allow the choice-of-law clause to dictate which state's law will apply. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). "Texas choice of law principles give effect to choice-of-law clauses if the law chosen by the parties has a reasonable relationship with the parties and the chosen state, and the law of the chosen state is not contrary to a fundamental policy of the state." *Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990).

In this case, the Purchase Agreement contains a choice-of-law clause that states that the substantive law of Illinois and federal law will govern all questions concerning the agreement. See Purchase Agreement § 8.09, at 32. Because Leggett purchased MMI in Illinois, the Purchase Agreement was written and signed in Illinois, and both companies do or did conduct business in Illinois, it seems clear that the parties to the contract had a reasonable relationship with the chosen state. *See* Purchase Agreement 1; Bankruptcy Order 1-2. It also does not appear that the law of Illinois, in regard to successor liability, is contrary to any fundamental policy of the state of Texas. Thus, Illinois law will be applied to determine whether Leggett is liable under a successor liability

theory.

**B. Leggett's Successor Liability under Illinois Law**

Under Illinois law "a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor corporation." *Vernon v. Schuster*, 688 N.E.2d 1172, 1175 (1997). There are four exceptions to this general rule of non-liability: (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger; (3) where the purchaser is merely a continuation of the seller; and (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. *Id.* at 1175-76. The basic rule and the exceptions to it are designed to strike a balance between the rights of companies engaged in legitimate corporate acquisitions and the rights of potential plaintiffs with legitimate claims against tortfeasors. *Id.* at 1175.

Plaintiff's Response alleges that "Leggett implicitly agreed to assume liability" under the first exception to the general rule. Pl's. Resp. Mot. Summ. J. 5. In order to establish the existence of an implied agreement to assume liability, Plaintiff points to Sections 1.05 and 7.03 of the Purchase Agreement. Section 1.05 mandates that the parties to the sale "shall agree upon a reasonable sum to fully cover any prospective post-Closing liability." Section 7.03, entitled Product Liability/Insurance Protection, contemplates Leggett's potential to obtain "tail coverage," insurance coverage for product sales made prior to the acquisition of MMI. Plaintiff argues that "by contemplating 'post-Closing coverage for pre-Closing product sales' and by agreeing to a sum for any 'post-Closing liability,' [Leggett] implicitly agreed to assume liability after the Closing date." Pls.' Resp. Mot. Summ. J. 6. Because Leggett thus agreed to assume liability, Plaintiff argues that summary judgment should not be granted.

5

This Court does not find that argument convincing. The Purchase Agreement expressly denies the assumption of tort liability. The Purchase Agreement provides that "Buyer shall assume from Seller, as appropriate, and thereafter be responsible for the payment, performance or discharge of only the liabilities and obligations of Seller (all such liabilities and obligations herein called the 'Assumed Obligations') under the Assumed Contracts first accruing or arising after the Closing."). Purchase Agreement § 1.03(a). Section 1.03(b) of the Purchase Agreement then provides that "Buyer will not assume any duty, obligation or liability whatsoever of Seller, other than the Assumed Obligations," and "[i]n furtherance and not in limitation of the foregoing, "Buyer shall not assume, and shall not be deemed to have assumed, any debt, claim, obligation or other liability of Seller (whether fixed, contingent, known, or unknown, matured or otherwise) . . . other than the Assumed Obligations, including but not limited to the following (collectively, the 'Unassumed Liabilities') . . . ."). Listed among the "Unassumed Liabilities" are

> all obligations and liabilities of Seller or any predecessor(s) resulting from, caused by or arising out of, or which relate to, directly or indirectly, the conduct of the Business anywhere or ownership or lease of any properties or assets or any properties or assets previously used by Seller at anytime, or other actions, omissions or events occurring prior to the Closing and which (A) constitute, may constitute or are alleged to constitute a tort, breach of contract or violation of any law, rule, regulation, treaty or similar authority or (B) relate to any and all claims, disputes, demands, actions, liabilities, damages, suits in equity or at law, administrative, regulatory, arbitral or quasi judicial proceedings, accounts, costs, expenses, setoffs, contributions, attorneys' fees and/or causes of action fo whatever kind or character against Seller or any predecessor(s) whether past, present, future, known or unknown, liquidated or unliquidated, accrued or unaccrued, pending or threatened.

Purchase Agreement § 1.03(b)(vii). The Agreement further provides that Seller shall use all reasonable efforts to ensure that the Sale Order includes the provision "that Buyer is assuming only the Assumed Obligations, and that Buyer shall have no duty, liability or obligation whatsoever (whenever arising) arising from or relating to the Unassumed Liabilities . . ." Purchase Agreement § 2.01(d).

6

"Express covenants abrogate the operation of implied covenants." *Resolution Trust Corp. v. Holtzman*, 618 N.E.2d 418, 424 (1993). The District Court for the Northern District of Illinois, when deciding a similar question of successor liability under Illinois law, found that allegations of an implied assumption of liability would fail before express assertions to the contrary. *Ruiz v. Weiler & Co., Inc.*, 860 F. Supp. 602, 605 (N.D. Ill. 1994). The court stated that "explicit language strongly militates against a finding of assumption of liability." *Id*. Here, the parties to the contract had an express covenant that no tort liability would pass from the seller to the buyer, and this fact must overrule any covenant that may be implied. It would be a strange ruling to hold a corporation to an implicit assumption of liability based on language in the purchase agreement when that same purchase agreement contains express statements eschewing liability.

Further, it is not clear that the language of the Purchase Agreement actually suggests an assumption of liability as the Plaintiff alleges. Plaintiff's Objection points to an Illinois case that discusses the possibility of assuming liability through a contractual agreement to provide post-Closing insurance coverage. *Green v. Firestone*, 460 N.E.2d 895 (1984). Yet the court in *Green* did not find that the defendant had assumed liability through implied language in a contract. *Id*. at 899. Rather, the court found that the language of the contract indicated the seller "wanted to have liability insurance maintained in its name expressly because [the] buyer was not assuming liability." *Id*. Simply put, *Green* does not stand for a rule that there would be liability under the facts in this case. Further, as discussed above, even if this language supports a finding of an implied assumption of liability, the express statements to the contrary would still negate them.

It is clear from the express language of the purchase agreement that Leggett did not assume successor tort liability. Plaintiff's argument attempting to show an implied assumption of liability

7

fails to a raise a question of material fact to the contrary because the express language of the contract negates any implied assumption of liability. Leggett is therefore entitled to summary judgment on this issue.

**C. Bankruptcy Order as Evidence**

The conclusion that Leggett did not assume successor liability by implication in the Purchase Agreement is alone sufficient to justify summary judgment. The parties dispute the relevance and effect of the Bankruptcy Order. Plaintiff argues that the Bankruptcy Order cannot be relied upon to exempt Defendant from liability under the reasoning of *Schwinn Cycling & Fitness Inc. v. Benonis*. 217 B.R. 790 (N.D. Ill. 1997). In *Schwinn*, the district court noted that a bankruptcy court's order finding that the buyer was not a successor-in-interest to the seller "was not intended to, nor could it, preempt all possible future successor liability claims" and that the order did not adjudicate whether the buyer was liable as a successor under applicable state law. *Id.* at 797-98. However, the Order may still be considered as evidence relevant to the parties' agreement. *See Diguilio v. Goss Intern. Corp.*, 906 N.E.2d 1268, 1277 (2009). The long-held general rule in Illinois (and throughout the country) is that, absent evidence of contrary intention, instruments executed by parties in reference to the same subject will be construed together. *Tepfer v. Deerfield Sav. & Loan Ass'n.*, 454 N.E.2d 676, 679 (1983); *Gardt v. Brown*, 113 Ill. 475, 478 (1885). The Bankruptcy Order supports the conclusion that Leggett purchased the assets free and clear of claims based on acts of the seller arising in tort, including successor liability and product liability. Bankruptcy Order ¶ ¶ 6, 6(d).

**D. Admissibility of Lyckman Affidavit**

In his affidavit in support of Leggett's motion for summary judgment, John Lyckman, Associate General Counsel for Leggett, states "Leggett did not, and never intended to, assume any

tort liabilities arising from products sold by [MMI] prior to the asset purchase." Lyckman Aff. ¶ 5. Plaintiff contends that Lyckman's statement is "factually and legally conclusory" and, as such, the affidavit is barred from consideration on the motion. Pls.' Resp. Mot. Summ. J. 8, citing *Marshall v. East Carrol Parshi Hosp. Serv. Dist.*, 134 F.3d 319, 324 (5th Cir. 1998).

Assuming *arguendo* that Lyckman's statement is indeed inadmissible, "the remainder of Mr. Lyckman's affidavit presents facts and opinions based on personal knowledge, and remains admissible under the Federal Rules of Evidence." Def.'s Mot. Summ. J. 8 (citing *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992) ( "[t]he court should disregard only the inadmissible portions of a challenged affidavit.")). Ultimately, the admissibility of the statement is not determinative of the case. The Purchase Agreement and the Bankruptcy Order are sufficient in themselves to allow the Court to reach a conclusion in regard to summary judgment. Because the Court does not consider Lyckman's affidavit, the objection is dismissed as moot.

### IV. Conclusion

The Court finds that Leggett has met its summary-judgment burden showing that no genuine issues of material fact exist. Specifically, Leggett has shown that it is not liable to Plaintiff as a parent or as a successor-in-interest. Accordingly, Leggett's motion for summary judgment (docket no. 54) is GRANTED, and Plaintiff shall take nothing on her claims against Defendant Leggett.

SIGNED this 27th day of June, 2011.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE