**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LINDA CALVASINA, Individually and as Next Friend of PETER CALVASINA, an Incapacitated Person, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No.  SA-09-CA-1024-XR |
| WAL-MART REAL ESTATE BUSINESS TRUST, WAL-MART STORES TEXAS, LLC, RHC/SPACEMASTER CORPORATION, and MORGAN MARSHALL INDUSTRIES | § § § § § § § | |
| *Defendants*. | § § | |

**ORDER**

On this date, the Court considered Plaintiff's Motion for Partial Summary Judgment (docket no. 82), Wal-Mart Stores Texas, LLC's Motion for Summary Judgment (docket no. 88), the Magistrate Judge's Memorandum and Recommendation (docket no. 107), Wal-Mart Stores Texas, LLC's and Wal-Mart Stores, Inc.'s Motion for Leave to Supplement the Evidentiary Record and Provide New Legal Authority (docket no. 119), and Wal-Mart Stores Texas, LLC's and Wal-Mart Stores, Inc.'s Motion for Summary Judgment (docket no. 127).

**I. Background and Procedural History**

On February 24, 2009, Peter Calvasina was working as a Service Writer/Greeter in the Tire Lube Express ("TLE") of the Wal-Mart store located at 6703 East Leslie Road, in San Antonio, Texas.  While working on the upper level of a tire rack system, Peter fell off the rack, and was severely injured.

1

The record indicates that Wal-Mart store workers such as Peter are generally employed by Wal-Mart Associates, Inc. ("Associates"), and Associates leases these employees to other Wal-Mart entities such as Wal-Mart Texas (a "special employer" or client).  It is undisputed that Associates employed Peter, and it is also undisputed that Associates has workers' compensation insurance through self-insurance.  Associates leased Peter to Wal-Mart Texas to work in the particular Wal-Mart store in which he was injured.  Wal-Mart Texas operated this store pursuant to a Franchise Agreement with Wal-Mart Stores, Inc. ("the Corporation").  It is undisputed that Associates is a wholly owned subsidiary of the Corporation.  There is also evidence that Wal-Mart Texas is, at least currently, a subsidiary of the Corporation, in addition to being a franchisee.  The Wal-Mart Real Estate Business Trust ("the Trust") owns the land, and entered into a lease with Wal-Mart Texas, pursuant to which Wal-Mart Texas operates the store.

Peter has obtained some workers' compensation benefits for his injury.  Peter's wife Linda Calvasina ("Plaintiff"), Individually and on behalf of Peter, subsequently filed this lawsuit, alleging negligence against the Trust, Wal-Mart Texas, and the Corporation.  In their answers, Defendants asserted the exclusive remedy affirmative defense under the Texas Workers' Compensation Act ("TWCA"), which provides that "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee."  TEX. LAB. CODE § 408.001.

As construed by the Texas Supreme Court in the context of temporary workers assigned to client companies, this provision establishes that a worker's claims are barred by the exclusive remedy provision if a defendant establishes that: (1) it was the worker's employer within the

meaning of the TWCA, and (2) it was covered by a workers' compensation insurance policy. *Western Steel Co. v. Altenburg*, 206 S.W.3d 121, 123 (Tex. 2006). Under the TWCA, "employer" means "a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage." TEX. LAB. CODE § 401.011(18). "Workers' compensation insurance coverage" means: (A) an approved insurance policy to secure the payment of compensation; (B) coverage to secure the payment of compensation through self-insurance as provided by the TWCA; or (C) coverage provided by a governmental entity to secure the payment of compensation. TEX. LAB. CODE § 401.011(44). An employer must show that it was insured through self-insurance or under an approved policy covering the payment of workers' compensation benefits to its employees on the date of the accident. A worker may have more than one employer for workers' compensation purposes, and each employer who subscribes to workers' compensation insurance may raise the exclusive-remedy provision as a bar to claims about the injury. *Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238, 242 (Tex. 2012).

The parties filed motions for summary judgment as to whether, in addition to Associates, the other Wal-Mart entities were Peter's employers entitled to invoke the § 408.001 defense. Because the sequence in which legal arguments were made and evidence was presented is determinative of this issue, the Court's presentation of the procedural background is necessarily lengthy and detailed.

**A. Plaintiff's Motion for Partial Summary Judgment**

On September 1, 2011, Plaintiff filed a Motion for Partial Summary Judgment, arguing that the Trust, Wal-Mart Texas, and the Corporation were not Peter's employers and did not have workers' compensation insurance, and thus were not entitled to the § 408.001 defense. Rather, Plaintiff asserted, Peter was employed solely by Associates. Plaintiff submitted summary judgment

3

evidence, including (1) the deposition of Saul Garcia, the manager of the store in which Peter was injured and the person designated as a corporate representative for all the Wal-Mart entities; (2) an "Employers [*sic*] First Report of Injury or Illness" concerning Peter's injury, showing the business as "Wal-Mart Associates, Inc."; and (3) evidence that Associates is self-insured. Although Plaintiff included the entire deposition of Saul Garcia, only the portion in which he stated that Associates was Peter's employer was specifically cited or discussed by any party.

Plaintiff further argued that "Texas law does not permit a parent corporation to assert the alter ego theory of piercing the corporate veil of a subsidiary and thereby assert workers' compensation immunity as a defense to suit by the subsidiary's employee." Plaintiff cited *Ingalls v. Standard Gypsum*, 70 S.W.3d 252 (Tex. App.–San Antonio 2001, pet. denied), in which the court of appeals indicated that a member of an LLC could not assert the exclusive remedy provision with regard to a claim by another member's employee solely because of their shared member status, although the non-employer also should not be liable as a third party unless it had committed an independent tort. *Ingalls* also discussed *Sims v. Western Waste Industries*, 918 S.W.2d 682 (Tex. App.–Beaumont 1996,writ denied), in which the court held that a parent corporation could not assert the exclusive remedy defense by reverse piercing the corporate veil of its subsidiary.

In response, the Trust conceded that it was not Peter's employer and that it has no employees. However, Defendants maintained that "Wal-Mart Stores Texas, LLC was also Peter Calvasina's employer, and because Wal-Mart Stores Texas, LLC had workers' compensation insurance coverage[,] and workers' compensation insurance benefits for Peter Calvasina were paid under a workers' compensation insurance policy held by [the Corporation], Plaintiff cannot maintain a lawsuit against Wal-Mart Stores Texas, LLC or [the Corporation] because workers' compensation

benefits were his exclusive remedy."  Docket no. 87 at ¶ 13.

In the Response, Defendants stated that "[w]hen a company actually controls the details of the employee's work at the time he is injured, and is also an 'employer' within the meaning of the Texas Workers' Compensation Act, the exclusive remedy provision of the Act applies to both the lessee company and the lessor company."  Docket no. 87 at ¶ 15 (emphasis added).  Defendants then stated that Associates was Peter's general employer, and that Associates' employees were leased to Wal-Mart Stores Texas, L.P. pursuant to a 2002 Master Employment Services Agreement ("Services Agreement").  Further, Wal-Mart Stores Texas, L.P. was merged with and into Wal-Mart Stores Texas, LLC (Wal-Mart Texas) on June 27, 2007, through which Wal-Mart Texas assumed responsibility for all the contractual obligations of Wal-Mart Stores Texas, L.P., including the Services Agreement between Associates and Wal-Mart Stores Texas, L.P.[1]

The Services Agreement states:

C.  Pursuant to the terms of the Franchise Agreement dated February 1, 2002, between WSI [the Corporation] and Wal-Mart Texas, Wal-Mart Texas commits to hiring and supervising efficient, competent, sober and courteous operators and employees for the conduct of its Wal-Mart franchise.  Furthermore, Wal-Mart Texas commits to paying all employee wages, commissions, and other compensation.

D. Consistent with the terms of the Franchise Agreement, Wal-Mart Texas and Associates desire that Associates be the exclusive provider of personnel (the "Personnel") necessary to operate Wal-Mart Texas in accordance with the WSI and Affiliates Employee Handbook, described more fully in this Agreement.

. . .

*Section 1.01*  Associates shall, during the term of this Agreement, be the exclusive

---

[1] Although Plaintiff argued that this Agreement could not be assigned, the Magistrate Judge concluded that Wal-Mart Texas did take over this contract pursuant to the merger.  No objections were filed to this conclusion, and the Court agrees with this conclusion.  Thus, the Court will treat the Services Agreement as being between Associates and Wal-Mart Texas.

provider of Personnel to Wal-Mart Texas on a daily basis as required. Associates shall provide to Wal-Mart Texas such Personnel as Wal-Mart Texas shall deem necessary from time to time to operate Wal-Mart Texas. Associates covenants not to hold itself out to the public as an employee leasing organization, personnel service, or contract labor firm.

*Section 1.02*  Associates shall provide direction and control over the Personnel consistent with the WSI and Affiliates Employee Handbook, as WSI may amend from time to time at its sole discretion. This includes, but is not limited to, the enforcement of specific policies for Wal-Mart Texas implementation of the WSI retail store-based concept. All services performed by the Personnel will be performed as employees of Associates exclusively for Wal-Mart Texas. Wal-Mart Texas will reimburse Associates for all appropriate Personnel expenses as required under this Agreement. All Personnel will be required to report hours worked on the job, expenses and appropriate correspondence to Associates.

*Section 1.03*  Associates, as a participating employer in all of Wal-Mart's employee benefit plans . . . agrees to provide each Employee with the same benefits under such plans that such Employee received or would have received as an employee of Wal-Mart. Wal-Mart and Associates agree that the coverage in and participation under each of such plans by an Employee and his or her respective dependents and/or beneficiaries shall not be adversely affected by the transactions contemplated or effected by this Agreement and that tenure of each employee is carried over to Associates.

*Section 1.04*  Associates shall be responsible for the remittance of all federal, state and local employment taxes with respect to the Personnel payable by an employer, and for the collection and remission to the appropriate taxing authority of all federal, state and local taxes to be withheld from the Personnel's wages.

*Section 1.05*  Associates shall carry or provide through self-insurance all appropriate workers' compensation insurance with respect to the Personnel as may be required by law.

*Section 1.06*  Associates shall be the rated employer for unemployment compensation purposes with respect to the Personnel.

*Section 1.07*  All Personnel assigned to Wal-Mart Texas or its affiliates shall for payroll tax reporting purposes be deemed employees of Associates, not Wal-Mart Texas or such affiliates.

*Section 1.08*  Personnel shall not provide any of the services contemplated in this Agreement to any entity other than Wal-Mart Texas or its affiliates.

*Section 2.01*  Wal-Mart Texas shall reimburse Associates in an amount equal to the direct Associates expense associated with the wages and compensation expenses incurred by Associates to provide the services of the Personnel to Wal-Mart Texas. Such Associates expense shall include all wages, salaries, bonuses, related employer payroll taxes and employee benefit costs and administration expenses.

*Section 2.02*  In addition to the reimbursement provided for pursuant to Section 2.01 of this Agreement, Wal-Mart Texas shall pay to Associates a service charge to compensate Associates for the administration of payroll and payroll tax reporting. Said charge shall be equal to five percent (5%) of the administration expenses incurred by Associates that are related to the employees subject to this Agreement.

Pursuant to the standard that Defendants had asserted applied (actual control of the details of the work at the time of injury), Defendants stated that Wal-Mart Texas "actually controlled the details of Peter Calvasina's work at the time of the incident made the basis of this lawsuit" because "[t]he premises upon which Peter Calvasina worked was operated and controlled by Wal-Mart Texas." Defendants submitted the lease agreement between the Trust and Wal-Mart Texas to show that it operated and controlled the premises. Defendants also stated that the work performed by Peter was for the benefit of Wal-Mart Texas and was controlled by Wal-Mart Texas, and therefore he was Wal-Mart Texas's employee. However, no specific evidence of control was cited in support of this statement.

Defendants also stated that Wal-Mart Texas "had workers' compensation insurance coverage." This was supported only by a footnote stating that Wal-Mart Texas "is a wholly owned subsidiary of Wal-Mart Stores, Inc. [the Corporation]" (citing Exhibit I) and the "workers' compensation insurance policy" issued to the Corporation covers the Corporation and "all its subsidiary and affiliated companies" (citing Exhibit E). Docket no. 87 at 5 n.2. Exhibit I is the Affidavit of Jeff Rickard, Assistant General Counsel for Wal-Mart, who provided information about the current members/ownership of Wal-Mart Texas to show that it is a wholly-owned subsidiary of

the Corporation.  Exhibit E is an "Excess Workers Compensation and Employers Liability Indemnity Policy" issued to the Corporation as named insured, which Defendants argued also covered its existing subsidiaries, including Wal-Mart Texas.[2]

With regard to the Corporation, Defendants argued *only* that it paid Peter's workers' compensation benefits – specifically, that it held the policy (the Excess Workers Compensation and Employers Liability Indemnity Policy submitted as Exhibit E) under which Peter's benefits were paid.  This was supported by the Affidavit of Dani Stephens, the Manager for Arkansas Claims Management, Inc., who stated that she was "responsible for administering the delivery of worker's compensation benefits" and was "personally familiar with Peter Calvasina's worker's compensation claim and benefits paid."  Docket no. 87-4 (Exhibit F).  Stephens stated that Peter's "workers'

---

[2]  Plaintiff disputed that Wal-Mart Texas was covered by the policy.  Plaintiff also objected to Rickard's affidavit, stating that it was conclusory and did not establish that Wal-Mart Texas was a subsidiary of the Corporation.  The Court notes, however, that the corporate structure described by Rickard is the same as that alleged by Plaintiff in the Fourth Amended Complaint, ¶12.  Thus, the Court will accept as true that Wal-Mart Texas, at least as of 2011, was a subsidiary of the Corporation.  The Court notes, however, that Rickard's affidavit is no evidence of whether Wal-Mart Texas was a subsidiary of the Corporation in 2009, when Peter was injured and when the relevant policy was in effect.  As Plaintiff correctly noted, the information in Rickard's Affidavit conflicts with information in the 2007 merger agreement.  Even if the policy covered existing subsidiaries (which is not clear from the policy language), Wal-Mart Texas provided no evidence that it was an existing subsidiary that was insured under the Excess Insurance Policy.  Thus, Wal-Mart Texas did not show that it "had workers' compensation insurance," as it argued.  Although this issue was not reached by the Magistrate Judge, it is another basis for accepting the Magistrate Judge's recommendations on the motions for summary judgment relating to Wal-Mart Texas as they were originally briefed.

The Court further notes, and will discuss *infra*, that this is an *excess* insurance policy for a certified self-insurer.  The policy provides that the insured is a duly qualified self-insurer, and states, "If you are not a duly qualified self-insurer at the time a loss occurs, no coverage will be afforded under this policy."  Docket no. 87-3 (Exhibit E) at LCALp0000346.  Further, it provides indemnification for workers' compensation losses paid by the insured "in excess of Your Retention," which is shown to be $5,000,000.  Thus, this is not a primary insurance policy.  As will be discussed, coverage under an excess insurance policy would not be sufficient to show that one has workers' compensation insurance as required by § 408.001.

compensation benefits for an on-the-job incident that occurred on February 24, 2009, at Walmart Store #2864 have been paid on behalf of Wal-Mart Stores, Inc. under a policy held by Wal-Mart Stores, Inc." The Corporation then asserted that Peter's workers' compensation benefits were paid "on behalf of" the Corporation, citing Stephens' Affidavit and a Texas Workers' Compensation Notice to "all Texas Associates." Docket no. 87-4 (Exhibit G). The Notice states that "Wal-Mart Stores, Inc. has been certified by the Texas Workers' Compensation Commission as a self-insured employer providing workers' compensation coverage to protect you in the event of work-related injury or illness" and that claims "will be administered by Arkansas Claims Management Inc." It was signed by Peter Calvasina on June 2, 2008. *Id.*

The Corporation's argument boiled down to one point: "because it paid Peter Calvasina's workers' compensation insurance benefits, there is evidence that [the Corporation] is also entitled to the protections of" § 408.001. The Corporation disputed Plaintiff's argument and authority (*Ingalls v. Standard Gypsum* and *Sims v. Wester Waste*, *supra*) that a parent corporation, having chosen to establish separate entities, could not assert the exclusive remedy defense with regard to a subsidiary's employee by reverse piercing the corporate veil, but did not provide any contrary case law. Nowhere did the Corporation argue that it was Peter's employer under any theory, or present evidence that it controlled any aspect of Peter's work.

In the Reply, Plaintiff asserted that "Defendants have offered nothing to show that either Wal-Mart Texas or the Corporation controlled the details of Mr. Calvasina's work, or even that they had the right to do so." Docket no. 92 at 3. Plaintiff noted that the Services Agreement states that Associates shall provide direction and control over Personnel, including Peter, that Personnel answer to Associates with respect to hours worked on the job, and that Associates assumed responsibility

9

to provide benefits, including workers' compensation insurance, and to remit taxes. Thus, Plaintiff argued, the Services Agreement shows that Associates had the exclusive right to control Personnel, and offers no support for the proposition that Defendants had the right to or ever did control the details of Peter's work. Plaintiff asserts that the Lease does not establish control, since control of the premises, without more, does not create an employment relationship.

Because it is important to the analysis and to understanding the arguments, the Court takes a moment to discuss the evidence of workers' compensation insurance provided by Defendants. Although the Excess Insurance Policy and the Notice to Associates indicate that the Corporation may be self-insured, the Corporation has never clearly so stated, nor has it provided any direct evidence that it is self-insured, even in response to Plaintiff's assertion that it is not self-insured. As noted, it is undisputed that Associates is self-insured. The TWCA requires all self-insurers to carry excess workers' compensation insurance. TEX. LAB. CODE § 407.067(a)-(b) ("Each applicant [for self insurance] shall obtain excess insurance or reinsurance . . . in at least the amount of $5 million per occurrence). Thus, it may be that (1) the Corporation has self-insurance, and this is an excess insurance policy for itself, (2) the Corporation does not have self-insurance, and this is an excess insurance policy for Associates, or (3) the Corporation has self-insurance, and this is an excess insurance policy for both the Corporation and Associates. Based on the arguments presented by the parties, it appears to the Court that the Corporation is not self insured and this is an excess policy for Associates, but this is not clear. Further, there is no indication that Wal-Mart Texas is self-insured or is named in any primary insurance policy. The only evidence of workers' compensation coverage for Wal-Mart Texas presented at any time is the Excess Workers' Compensation Policy, and Plaintiff

disputes whether Wal-Mart Texas was covered by that policy.[3]

Thus, based on the evidence and arguments presented, it appears to the Court (though it is not entirely clear), that to the extent the Corporation "paid" Peter's workers' compensation benefits, it was under the Excess Insurance Policy.  *See* docket no. 88 at 6 (citing the Excess Policy when saying that Peter has been paid workers' compensation benefits).  As noted, the Excess Insurance Policy appears to be held as a requirement for Associates' self-insurance, not on the basis of self-insurance held by the Corporation, although it could be for the Corporation if it is self-insured.  Further, it appears that all three entities are seeking the protection of § 408.001 under the umbrella of Associates' self-insurance.  At the very least, Wal-Mart Texas is seeking protection under another entity's self-insurance, as there is no evidence that Wal-Mart Texas was self-insured or held a primary insurance policy.  The Court will proceed under these assumptions.  If they are erroneous, the parties are directed to inform the Court.

**B. Wal-Mart Texas's Motion for Summary Judgment**[4]

Wal-Mart Texas also filed a cross-motion for summary judgment, asserting that its § 408.001 affirmative defense was established as a matter of law.  Notably, in its motion for summary judgment, Wal-Mart Texas again argued that, "[w]hen a company actually controls the details of the employee's work at the time he is injured, and is also an 'employer' within the meaning of the Texas Workers' Compensation Act, the exclusive remedy provision of the Act applies to both the lessee

---

[3] And the Court has concluded that Defendants failed to provide evidence that Wal-Mart Texas was covered by the policy at the time of the accident.

[4] The Corporation did not file a cross-motion for summary judgment at that time.  A footnote in Defendants' response to Plaintiff's Motion stated that "a Motion for Summary Judgment on behalf of [the Corporation] is forthcoming," but no motion was filed until May 21, 2012, approximately eight months later.

company and the lessor company." Motion (docket no. 88) at ¶ 18 (emphasis added). The arguments raised in the motion are substantially similar to the arguments made in the Response to Plaintiff's motion, and no additional evidence was cited or submitted.

In the Response, Plaintiff again asserted that "[t]here is nothing in the record to support Defendant's assertion that it controlled the details of Mr. Calvasina's work." Docket no. 100 at ¶ 4. Plaintiff noted that, "[t]o establish its affirmative defense a defendant company must point to evidence that it controlled the details of the worker's job at the time he was injured." *Id.* at ¶ 6. Plaintiff pointed out that there was no proof that Wal-Mart Texas supervised, directed, or controlled Peter, and argued that Wal-Mart Texas's operation and control of the premises was insufficient to establish an employment relationship. Plaintiff further pointed out that the Texas Supreme Court has stated that courts must look to "traditional indicia, such as the exercise of actual control over the details of the work that gave rise to the injury" to determine who is an employer of the injured employee. *Id.* at ¶ 8 (quoting *Garza v. Excel Logistics*, 161 S.W.3d 473, 476-77 (Tex. 2005)).

In its Reply (docket no. 104), Wal-Mart Texas asserted, contrary to the standard asserted in its own motion for summary judgment, that actual control over the details of the work giving rise to the injury was not a necessary factor, but simply "just one of several 'traditional indicia' of employment." Citing to the Texas Supreme Court's decisions in *Western Steel v. Altenburg* and *Garza v. Excel Logistics*, Wal-Mart Texas argued that other "traditional indicia" cited in these opinions include whether the employee was working on the company's premises, in furtherance of the company's day-to-day business, at the time of the injury. Because these two factors were undisputed, Wal-Mart Texas argued, Peter Calvasina was an employee of Wal-Mart Texas as a matter of law.

To nevertheless establish its control if it was a required factor, Wal-Mart Texas argued that Plaintiff mis-stated the language of the Services Agreement, which states that Associates "shall provide direction and control over the Personnel consistent with the WSI and Affiliates Employee Handbook, as WSI may amend from time to time at its sole discretion." Wal-Mart Texas did not submit the WSI and Affiliates Employee Handbook, but argued that this language shows that Associates "had direction and control only as prescribed by the Wal-Mart Stores, Inc. documents" and thus does not indicate that Associates had exclusive control over the Personnel.

Wal-Mart Texas further noted that although Associates agreed to provide benefits to its personnel, Wal-Mart Texas agreed to reimburse Associates for all of these expenses, including wages, salaries, bonuses, related employer payroll taxes and employee benefit costs and administration expenses, meaning that Wal-Mart Texas "is ultimately paying for and providing all of the wages, salaries, benefits and employment taxes for those employees." Wal-Mart Texas argued that provisions stating that Associates is the employer for unemployment compensation and payroll purposes simply divides up the responsibilities and obligations between the two employers.

## C. The Magistrate Judge's Report and Recommendation

The Court referred the motions, along with a motion filed by the Trust asserting that it had no duty to Plaintiff, to the Magistrate Judge, who issued her Report and Recommendations on the motions on January 4, 2012. She concluded that Plaintiff did not dispute that the Trust owed no duty, and that the Trust's motion for summary judgment should be granted.

Regarding the issue of whether Wal-Mart Texas and the Corporation were Peter's employers for purposes of the workers' compensation exclusive remedy defense, the Magistrate Judge concluded that the relevant Texas authority was *Garza v. Exel Logistics*, 161 S.W.3d 473 (Tex.

13

2005).  In their briefing, the parties cited a line of Texas Supreme Court cases – *Wingfoot v. Alvarado*, *Garza v. Exel Logistics*, and *Western Steel v. Altenburg* – that involved workers employed by a temporary employment agency and provided to a client.  Notably, Defendants cited no other cases regarding who is an employer for workers' compensation purposes.

In *Garza*, it was undisputed that the worker was an employee of the temporary employment agency, and the question was whether he was also an employee of the client company.  The Texas Supreme Court held that, in determining if a general employee of a temporary agency is also an employee of a client company for purposes of the Act, we consider "traditional indicia, such as the exercise of actual control over the details of the work that gave rise to the injury."  *Id.* at 477.  The court found that the "undisputed evidence establishe[d] that at the time Garza was injured, he was working on Exel's premises, in the furtherance of Exel's day-to-day business, and the details of his work that caused his injury were specifically directed by Exel."  *Id.* at 477.  Based on this evidence, the Court found that Garza was also an employee of Exel, the client company.

Based on the briefing submitted by the parties and the discussion in *Garza*, the Magistrate Judge concluded that three factors were relevant to determining whether Wal-Mart Texas was Peter's employer at the time he was injured: (1) whether Peter was working on the premises of Wal-Mart Texas; (2) whether Peter was working to further the day-to-day business of Wal-Mart Texas; and (3) whether the details of Peter's work that caused his injury were specifically directed by Wal-Mart Texas.

The Magistrate Judge found that there was no genuine issue of material fact on the first element — Wal-Mart Texas had a 15-year lease on the premises, which included the TLE; Wal-Mart Texas controlled and operated the TLE; and Peter was injured as he worked in the TLE.  The

14

Magistrate Judge also found that there was no fact issue on the second element.  She concluded that the evidence demonstrated that Peter's services were intended to further the business of Wal-Mart Texas because: (1) Associates' employees were leased to Wal-Mart Texas under the  Services Agreement providing that all services performed by Associates' Personnel will be performed as employees of Associates exclusively for Wal-Mart Texas; and (2) under the Agreement, Wal-Mart Texas was obligated to accept the services of the employees Associates provided and to reimburse Associates for expenses incurred by Associates to provide the services of the Personnel.[5]

Turning to the third factor listed in *Garza* – whether the details of Peter's work that caused his injury were specifically directed or controlled by Wal-Mart Texas – the Magistrate Judge stated that Wal-Mart Texas did not appear to address this factor.  The Magistrate Judge noted that the Services Agreement requires Associates to provide employee benefits, including workers' compensation insurance, and to pay employment taxes.  But she noted that this does not preclude Wal-Mart Texas from also being an employer because the Services Agreement also requires Wal-Mart Texas to reimburse Associates for all wages and compensation benefits incurred, including employee benefit costs.

The Magistrate Judge further noted Plaintiff's argument that the Services Agreement provides that "Associates shall provide direction and control over the Personnel consistent with the WSI and Affiliates Employee Handbook, as WSI may amend from time to time at its sole discretion," but also noted that the WSI and Affiliates Employee Handbook was not in the record,

---

[5] Plaintiff noted that there was no evidence that the 2002 Services Agreement was in effect in 2009 at the time of the injury.  The Magistrate Judge noted that the Agreement renewed annually unless terminated, that nothing in the record suggested that it had been terminated, and thus it appeared to remain in effect.  The Court will likewise presume that the Agreement remained in effect in 2009 because it automatically renewed and there is no indication that it was terminated.

such that nothing suggested that Associates had exclusive direction and control precluding Wal-Mart Texas from exerting any control over employees working on its premises.  On the other hand, she recognized, nothing in the Services Agreement gives Wal-Mart Texas the right to control and "nothing in the record suggests whether or not Wal-Mart Texas controlled any details of employees' duties at the Wal-Mart Superstore."  More importantly, she concluded, Wal-Mart Texas provided "no evidence that it was directing any aspect of Peter Calvasina's work at the time he was injured." Accordingly, she concluded, Wal-Mart Texas failed to conclusively establish the third factor (control over the details of the work), such that Wal-Mart Texas's motion should be denied.  The Magistrate Judge further concluded that Wal-Mart Texas failed to raise a fact issue on the element of control, and that the Plaintiff's motion should be granted.

As to the Corporation, she correctly noted that it did "not argue it controlled the details of Peter Calvasina's work at the time he was injured" but instead argued that Plaintiff's claims were barred because it held the workers' compensation insurance policy under which Peter's benefits were paid.  The Magistrate Judge noted that the Corporation cited no authority that merely holding a workers' compensation insurance policy is sufficient to establish the affirmative defense or, specifically, that a holder of the insurance policy is automatically considered an employer under the Act.  The Magistrate Judge concluded that at least one Texas court had held that the fact that the Corporation provided an insurance policy for itself and its subsidiary is not relevant to whether the Corporation exerted control over Peter at the time of his injury.  Docket no. 107 at 34 & n.193 (citing *Sims v. Western Waste Indus.*, 918 S.W.2d 682, 684 (Tex. App.–Beaumont 1996, writ denied) ("Coverage of both parent and subsidiary corporations under the same workers' compensation insurance policy has little, if any, relevance to the issue of whether the parent corporation is the

subsidiary corporation worker's employer."). Because the Corporation failed to raise a fact issue on whether it was Peter's employer at the time he was injured, the Magistrate Judge recommended that Plaintiff's motion for summary judgment be granted as to the Corporation.

**D. Objections**

Wal-Mart Texas and the Corporation moved for an extension of time to file objections to the Report and Recommendation, and then ultimately Wal-Mart Texas filed objections on January 25. The Corporation did not file any objections. Building on the arguments it had first raised in its reply brief on summary judgment, Wal-Mart Texas argued that actual control is not a necessary factor for establishing an employment relationship. Wal-Mart Texas argued that the Texas Supreme Court "revisited" *Garza* in *Western Steel* and held that the exercise of actual control over the details of the work that gave rise to the injury "was just one of several" traditional indicia of employment, and that this third factor is therefore not dispositive. Wal-Mart Texas argued that the Magistrate Judge's findings that Peter was working on premises controlled and operated by Wal-Mart Texas and for the benefit of Wal-Mart Texas at the time of the injury (*i.e.*, the first two *Garza* factors) are sufficient to establish Wal-Mart Texas as Peter's employer.

In the alternative, if control is a required element, Wal-Mart Texas contended that it directed Peter's work. In support, it re-iterated its arguments that the Services Agreement does not establish that Associates had exclusive direction and control, and in fact states that Wal-Mart Texas "commits to hiring and supervising efficient, competent, sober and courteous operators and employees for the conduct of its Wal-Mart franchise." Wal-Mart Texas argued that supervising employees necessarily includes directing the details of the employees' work.

Wal-Mart Texas then contended that an employer is protected under § 408.001 if it had the

17

"right to control the employee," which it recognized is "a different analysis than direction of the duties of an employee at the time of an injury," Objections (docket no. 114) at 6, and that the Services Agreement gave it a right of control.  It argued that Wal-Mart Texas is "engaged in the business of retailing and wholesaling using supercenters," that Peter "was employed as a Service Writer at the Tire, Lube and Express Service in the Supercenter," and "therefore [he] fell under the purview of the control exercised by Wal-Mart Texas by engaging in such business."

Wal-Mart Texas also cited the deposition of Saul Garcia, which had been placed in the summary-judgment record by Plaintiff and was not previously cited by Defendants.  Garcia testified that "the nature of work performed by [Peter] was a Service Writer/Greeter, responsible for initially greeting customers to Tire, Lube and Express Service."  Further citing Garcia's deposition and new legal authority, Wal-Mart Texas stated that Peter was using tools and equipment of Wal-Mart Texas to perform his work, and that it trained Plaintiff at the TLE. Wal-Mart Texas further asserted that Peter was a permanent employee, not temporary, and the Services Agreement states that Associates will provide to Wal-Mart Texas "such personnel as Wal-Mart Texas shall deem necessary to operate Wal-Mart Texas."  Therefore, Wal-Mart Texas argued, Wal-Mart Texas "made the determination, *i.e.* exercised the control, over the employee needs, including Peter Calvasina."  Wal-Mart Texas argued it therefore established that it controlled Peter's work and should be entitled to summary judgment.  At the very least, it argued, Plaintiff's motion should be denied because the evidence raises a material fact issue.

**E. Motion to Supplement and to Provide New Legal Authority**

Shortly after Wal-Mart Texas's objections were filed, the parties moved the Court for an extension of time to conduct their mediation, and the Court extended the deadline for them to

mediate until March 1.  The parties then sought a further extension for the mediation until April 9, along with an extension of the discovery and dispositive motion deadlines.

On April 6, 2012, thee months after the Magistrate Judge issued her Report and Recommendation, Defendants filed a Motion for Leave to Supplement the Evidentiary Record and Provide New Legal Authority (docket no. 119).  Plaintiff opposed this motion.[6]

### 1. Motion to Provide New Legal Authority - *Port Elevator v. Casados*

Wal-Mart Texas and the Corporation moved to provide new legal authority governing their § 408.001 defense.  They argued that the Texas Supreme Court's decision in *Port Elevator v. Casados*, 358 S.W.3d 238 (Tex. 2012), which was issued shortly after the Magistrate Judge issued her opinion and Wal-Mart Texas filed objections, is relevant to the issues.  Despite the fact that the *Port Elevator* decision did not analyze the issue of who is an employer under the Act – it expressly noted that this issue was undisputed – and the only issue was whether the employee was covered by a workers' compensation policy issued to the client company, Defendants argued that it "supports the conclusion that *Western Steel* is the appropriate standard for determining employer status under the TWCA" and that "no single indication of employment is either mandatory or determinative." Applying this standard, Defendants argued that the evidence shows that they together exercised control over Peter's work.  Defendants have since conceded that *Port Elevator* did not address the issue of control and does not provide a basis for submitting new evidence or arguments on the issue

---

[6] On April 10, the day after the mediation, the parties informed the Court that they were unable to reach an agreement during the mediation, but that they also did not reach an impasse, and were continuing to engage in settlement negotiations.  In addition, the parties informed the Court on April 20 and again on May 1 that they were continuing to negotiate through the mediator.  The parties further requested extensions of certain scheduling order deadlines, including the discovery deadline.

of control or who is an employer.  Docket no. 160 at 3 n.1 ("Defendants agree that *Port Elevator* "provides no independent grounds upon which supplemental evidence should be considered.").

Defendants also argued that *Port Elevator* "supports the conclusion that Calvasina's receipt of workers' compensation benefits from one of his employers - irrespective of a dispute as to the claimed employer status of another insured - bars Plaintiffs' tort recovery against Defendants." Docket no. 119 att 11.  Because it is undisputed that Peter has received more than $1.5 million in workers' compensation benefits, Defendants argue, "the holding in the *Port Elevator* case bars Plaintiffs from recovering additional sums in tort against Wal-Mart Texas" and the Corporation.  *Id.* Plaintiff did not address this argument, stating only that the *Port Elevator* case is not material because there was no dispute about whether the plaintiff was an employee of the defendant.

The Court finds that Defendants misconstrue *Port Elevator*.  In *Port Elevator*, it was agreed that the worker was an employee of both the staffing company and the client company.  *Both* companies also had workers' compensation insurance.  The only issue was whether the worker was covered by the client's workers' compensation insurance policy, and the Court held that he was.  The Court held that the worker therefore had the right to pursue workers' compensation benefits from the staffing company's insurer, the client's insurer, or both.  *Id.* at 244.  Further, both employers were entitled to the exclusive remedy defense, and the worker's negligence claims against the client were barred for that reason, not because the worker had received benefits from the staffing company's insurer.

### 2. Motion to Supplement the Record

Wal-Mart Texas and the Corporation further moved for leave to submit additional evidence. In a footnote, the Corporation conceded that it had failed to file objections to the Magistrate Judge's

report, but "move[d] for leave for this Court to review the Magistrate [Judge]'s Report and Recommendations with regard to Plaintiffs' motion for summary judgment and consider the same arguments advanced by Texas LLC and the arguments, authority, and evidence submitted in [the] motion." The Corporation argued that Plaintiff would not be prejudiced because the deadline for filing motions for summary judgment had not run and Plaintiff would be afforded the opportunity to respond because Wal-Mart Texas's arguments "are nearly identical in nature." The motion re-urged some of its prior arguments and sought leave to introduce new evidence of control by Wal-Mart Texas and the Corporation.[7] The motion focused primarily on the Corporation, and also asserted a new joint employer/joint management/"inter-relatedness" argument. Docket no. 119- at 6 ("Wal-Mart Stores and Wal-Mart Texas together shared the management of Mr. Calvasina's work performance and workplace conditions . . . .").

## F. Motion for Summary Judgment, part 2

On May 21, the deadline for filing dispositive motions and more than five months after the

---

[7] Defendants cited two new cases – *Flores v. N. Am. Techs. Group*, 176 S.W.3d 442, 448-40 (Tex. App.–Houston [1st Dist.], pet denied) and *Aguilar v. Wenglar Constr. Co.*, 871 S.W.2d 829, 831 (Tex. App.–Corpus Christi, pet. dism'd) – for the proposition that no single indicator of employment is mandatory or determinative, and that therefore control over the details of the work is not required. But both of these cases apply a borrowed servant analysis with regard to temporary employees, and the heart of the borrowed servant analysis is determining who controlled the details of the work that gave rise to the injury. The borrowed servant test developed in the tort context and is designed to assign liability to the entity that exercised control over the allegedly negligent conduct. Although the Texas Supreme Court has made clear that this is not the goal of the TWCA because the TWCA does not seek to assign liability to only one party, Defendants originally cited and relied on the borrowed servant test. Defendants further mistakenly cite cases applying this test, which requires control, to support their argument that control is not required. Both the cases cited by Defendants require a showing of control – *Flores* states the test for determining when a contract will determine who had control and *Aguilar* emphasizes that the relevant "factors are in the final analysis merely aids to determine the ultimate question of which employer has the right of control to direct the details of the work." Clearly, an essential element of the "right of control" test is who exercised control over the work (either pursuant to a contractual right or to an actual exercise of control).

Magistrate Judge issued her Report and Recommendation, Wal-Mart Texas and the Corporation filed an additional motion for summary judgment (docket no. 127). In this motion, they again argued that they are entitled to summary judgment under § 408.001. They stated that, because this issue was previously briefed and remained pending, the new motion "focuses upon the particular form of control exercised by [the Corporation]." Docket no. 127 at 2. This motion relied primarily on the evidence sought to be introduced via the motion to supplement, but also included additional evidence. The motion also asserted the joint employer/joint management/"inter-relatedness" theory first raised in the motion to supplement as a basis for the exclusive remedy defense.

**G. Request for Supplemental Briefing**

On August 9, 2012, the Court directed Defendants to submit additional briefing in support of their motion to supplement addressing the relevant factors set forth by the Fifth Circuit in *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 854 (5th Cir. 2003). The Court also requested briefing on whether the Staff Leasing Services Act ("SLSA") applied and, if not, how the policies underlying the Act should affect the Court's analysis. The SLSA regulates certain staff leasing services in Texas, and includes regulations concerning workers' compensation insurance. TEX. LAB. CODE Ch. 91. That briefing was submitted on August 20.

## II. Analysis

The Court must determine whether it should permit Wal-Mart Texas and the Corporation to submit supplemental evidence and new legal arguments in support of their affirmative defense (including via a second motion for summary judgment) after the Magistrate Judge had already issued a Report recommending that the Court rule against them on this issue.

A district court has discretion whether to grant or deny a motion to supplement the record

22

after a magistrate judge recommends granting or denying summary judgment. *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 854 (5th Cir. 2003).[8] The Fifth Circuit has held that "it is clear that the district court has wide discretion to consider and reconsider the magistrate judge's recommendation. In the course of performing its open-ended review, the district court need not reject newly-proffered evidence simply because it was not presented to the magistrate judge. Litigants may not, however, use the magistrate judge as a mere sounding-board for the sufficiency of the evidence." *Id.* (quoting *Freeman v. County of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998)).

The Fifth Circuit has further suggested several factors that a court should consider in deciding whether to accept additional evidence after a magistrate judge's recommendation has been issued, including: (1) the moving party's reasons for not originally submitting the evidence; (2) the importance of the omitted evidence to the moving party's case; (3) whether the evidence was previously available to the non-moving party when it responded to the summary judgment motion; and (4) the likelihood of unfair prejudice to the non-moving party if the evidence is accepted. *See id.* at 853.

As noted, in addition to the motion to supplement, the Corporation and Wal-Mart Texas filed

---

[8] In *Performance Autoplex*, both Performance and Mid-Continent filed motions for summary judgment. The district court referred the matter to a magistrate judge, who recommended that Performance's motion be denied and Mid-Continent's motion be granted. Performance filed objections to the magistrate judge's report and filed a motion to supplement the record. The district court conducted an independent review of the record and a de novo review of those portions of the report to which Performance objected. The district court then adopted the magistrate judge's report, granted Mid-Continent's motion for summary judgment, and denied Performance's motion for summary judgment and motion to supplement the record. The Fifth Circuit held that the district court did not abuse its discretion by denying the motion to supplement. The Fifth Circuit held that some of the evidence likely would not have changed the district court's decision. A third piece of evidence was relevant, however. But the Fifth Circuit relied heavily on the fact that this evidence was available at the time the summary judgment motion was prepared and no explanation was provided as to why it was not introduced originally.

a successive motion for summary judgment on the § 408.001 defense.  The second motion for summary judgment is in essence a second motion to supplement the record, but re-cast as a motion for summary judgment.  As the Court has noted, both the motion to supplement and the successive motion for summary judgment raise new legal arguments on the § 408.001 defense in addition to simply supplementing the evidentiary record before the Magistrate Judge.  The time for Defendants to present such arguments and evidence was when Plaintiff moved for summary judgment on this issue.  Accordingly, the Court will determine whether it should consider the second motion for summary judgment on the § 408.001 defense under the same standard applicable to the motion to supplement.

Because the Court must determine the importance of the new evidence and arguments in deciding the motion to supplement, the Court must first consider whether the Magistrate Judge reached the correct recommendation to determine whether the new evidence changes the outcome.

## A. The Magistrate Judge's Report and Objections Thereto

As noted, the Magistrate Judge found that no genuine issues of material fact existed on whether Wal-Mart Texas or the Corporation exercised control over the details of the work giving rise to Peter's injuries, and thus Plaintiff's motion for summary judgment should be granted as to Wal-Mart Texas and the Corporation, and Wal-Mart Texas's motion should be denied.

In the original motions for summary judgment, all parties argued that "control over the details of the work that gave rise to the injury" was a required finding for the defendant to be considered an employer entitled to the § 408.001 defense.  All of the cases cited by the parties concerning who was an employer involved this borrowed servant/right-of-control test.  Although *Garza* and *Western Steel* both stated that we look to traditional indicia of employment in determining who is an employer, the

only factor expressly cited with regard to the client company was control over the details of the work giving rise to the injury. The parties' arguments and legal citations therefore directed the Magistrate Judge to focus on this element, and she did so.

Reviewing the Report concerning the Plaintiff's motion for summary judgment as to the Corporation, the Court concludes that the Magistrate Judge's recommendation was correct – there was no evidence that the Corporation exercised control over the details of Peter's work, and the Corporation failed to even argue that it was Peter's employer. The Corporation argued only that it paid Peter's workers' compensation benefits.[9] But that does not establish that the Corporation exercised any control over Peter or was his employer. *See Alice Leasing Corp. v. Castillo*, 53 S.W.3d 433, 443 (Tex. App.–San Antonio 2001, pet. denied) ("the party who assumes primary responsibility for payment of workers' compensation benefits is not in every instance the workers' compensation employer"); *Denison v. Haeber Roofing Co.*, 767 S.W.2d 862, 866 (Tex. App.–Corpus Christi 1989, no writ) ("the focus in determining the status of employer/employee is on the right of control, not who may or may not have carried workers compensation insurance or gratuitously paid compensation benefits"). Thus, there was no argument or evidence of control by the Corporation before the Magistrate Judge.[10]

---

[9] As noted, this appears to be pursuant to an Excess Insurance Policy based on Associates' self-insurance, not any primary workers' compensation policy held by the Corporation. But even if the Corporation is a self-insurer, it presented no evidence or argument that it was Peter's employer. Thus, even if the Corporation was self-insured and paid Peter's workers' compensation benefits on its own behalf, its failure to argue or provide evidence that it was Peter's employer warranted summary judgment against it on the § 408.001 defense.

[10] Although the Services Agreement provided that Associates would provide direction and control over Personnel "consistent with the WSI and Affiliates Employee Handbook," the Corporation did not argue that this gave it a right to control. Further, there was no evidence concerning the contents of the Handbook or any of the specific policies issued by the Corporation.

Further, the Corporation failed to timely file objections to the Magistrate Judge's report and recommendation. Such a failure would preclude *de novo* review of the report and recommendation, but even a *de novo* review would not have yielded a different result given the lack of argument and evidence on the issue of the Corporation's control. Accordingly, the Magistrate Judge's recommendation was correct.

The Magistrate Judge also correctly concluded that Wal-Mart Texas had failed to establish that it had control over the details of the work that gave rise to Peter's injury. Although there was evidence that Wal-Mart Texas indirectly paid Peter's salary and his benefits and that Peter was leased to Wal-Mart Texas, Wal-Mart Texas provided no evidence that it had a contractual right to control or that it actually controlled Peter's work. It provided no evidence that it supervised Peter or in any way controlled or directed the details of his work. Further, the Services Agreement assigned the right to direct and control Peter to Associates, not Wal-Mart Texas.

Wal-Mart Texas did timely file objections, but those objections lack merit. Wal-Mart Texas argued, contrary to its own motion for summary judgment and based on an argument belatedly first raised in its reply brief, that a finding that Wal-Mart Texas exercised control over Peter's work was not required. This argument was not timely raised. *Gillaspy v. Dallas Indep. Sch. Dist.*, 278 Fec.

───────────────────

In addition, the Services Agreement stated that all services performed by Associates would be performed "as employees of Associates exclusively for Wal-Mart Texas," not the Corporation.

In their later briefing, Defendants contended that the Services Agreement gave the Corporation the right to enforce its policies. The Court disagrees with this construction of the Agreement, and concludes that the right to enforce policies is contractually assigned to Associates. The Services Agreement states, "Associates shall provide direction and control over the Personnel consistent with the WSI and Affiliates Employee Handbook, as WSI may amend from time to time at its sole discretion. This includes, but is not limited to, the enforcement of specific policies for Wal-Mart Texas implementation of the WMSI retail store-based concept." The language "[t]his includes ... enforcement" refers to the obligation of Associates to provide direction and control, thus giving Associates the right to enforce policies issued by the Corporation.

Appx. 307, 315 (5th Cir. 2008) ("It is the practice of this court and the district courts to refuse to consider arguments raised for the first time in reply briefs."); *United States v. Jackson*, 426 F.3d 301, 304 n. 2 (5th Cir.2005) ("Arguments raised for the first time in a reply brief, even by pro se litigants . . . are waived.").

Moreover, Wal-Mart Texas did not cite a single case to support its argument that it could be found to be an employer without having a right to control or actually exercising control over the worker, and certainly that argument lacked merit under the borrowed-servant/right-to-control test that Wal-Mart Texas had itself asserted was applicable in the motion for summary judgment. *See Poynor v. Mitsubishi Power Sys. Americas, Inc.*, 2012 WL 2036957 (5th Cir. 2012) ("To determine whether an employee was a borrowed servant at the time of the accident, Texas courts inquire into which employer had the right to control the employee. 'Under the right-of-control test, an injured worker is held to be the employee of the employer who had the right of control over the details of the work at the time of the injury.'"); *Lockett v. HB Zachry Co.*, 285 S.W.3d 63, 75 (Tex.App.-Houston [1st Dist.] 2009, no pet.) (noting, in general Texas workers' compensation context, that "[b]orrowed employee status hinges on whether the other employer or its agents have the right to direct and control the employee with respect to the details of the particular work at issue").

Further, Wal-Mart Texas's argument that the Texas Supreme Court "revisited" the holding of *Garza* as to whether control was required in *Western Steel* clearly lacks merit. In this per curiam opinion, the Court considered (as in *Garza*) whether an employee of a temporary services company was also a borrowed employee of the client company. The Court cited *Wingfoot* and *Garza*, noting that both involved a situation wherein the injured worker was employed by a temporary employment

27

agency (general employer) which agreed to provide another company (client company) with temporary workers, and the injured worker sustained a work-related injury while working on the premises of the client company. *Id.* at 123. The Court stated, "In determining whether the client company was the plaintiff's employer, we consider whether the plaintiff was the client's company's employee within the meaning of the TWCA." *Id.* And, "[i]n answering that question, 'we consider traditional indicia, such as the exercise of actual control over the details of the work that gave rise to the injury.'" *Id.* (quoting *Garza*, 161 S.W.3d at 477). It then set forth the three factors it found to establish an employment relationship in *Garza*: "at the time the worker was injured, he was working on the client company's premises, in the furtherance of the client company's day-to-day business, and the details of the work that caused his injury were specifically directed by the client company." *Id.* at 123-24.

Thus, *Western Steel* does not "revisit" the standard set forth in *Garza* or purport to change or clarify it. Rather, it applies the same standard set forth in *Garza*, which is that courts look to traditional indicia of employment in determining employer/employee status of a temporary employee for purposes of the TWCA, including "the exercise of actual control over the details of the work that gave rise to the injury." Thus, like *Garza*, it cited the borrowed servant/right-of-control test with regard to whether the client company was an employer of the worker.

Moreover, although Wal-Mart Texas argued that the first two *Garza* elements (working on the client's premises and in furtherance of the client's business) alone are sufficient to establish an employer/employee relationship, the Court concludes that these two elements alone would not be sufficient to raise a fact issue, as they are equally consistent with situations in which a worker is not an employee of the client company, such as when employees of independent contractors work on the

28

premises in furtherance of the premises owner's business.  Wal-Mart Texas cites no case in which these two elements alone, without more, would establish an employer/employee relationship in the workers' compensation context.  Further, in *Wingfoot* and *Garza*, the Texas Supreme Court expressly noted these factors *in conjunction with* the fact that the worker was under the "direct supervision" of the client company.  Thus, this aspect of Wal-Mart Texas's objections also lacks merit.

Wal-Mart Texas then argued that, even if control is required, it produced sufficient evidence to raise a fact issue on control.  Wal-Mart Texas noted that the Services Agreement provides that Associates will provide direction and control over the personnel consistent with the WSI and Affiliates Employee Handbook.  However, the Magistrate Judge correctly noted that, while this may show that Associates did not have exclusive control, it is not evidence that Wal-Mart Texas had a right to or did exercise control.  Thus, the only evidence of a contractual right of control was the right assigned to Associates.

Wal-Mart Texas noted that other portions of the Agreement state that Wal-Mart Texas "commits to hiring and supervising efficient, competent, sober and courteous operators and employees for the conduct of its Wal-Mart franchise."  Wal-Mart Texas argued that the Agreement therefore states that Wal-Mart Texas will hire and supervise the employees, and supervising necessarily includes directing the details of the employees' work.  However, what the Agreement establishes is that Wal-Mart Texas has agreed with the Corporation in the Franchise Agreement that it will hire and supervise "efficient, competent, sober and courteous operators and employees for the conduct of its Wal-Mart franchise" and will pay their wages.  Consistent with this Agreement, Wal-Mart Texas contracted with Associates to "be the exclusive provider of personnel necessary to

operate Wal-Mart Texas in accordance with the WSI and Affiliates Employee Handbook." Associates would then "provide direction and control over the Personnel consistent with the WSI and Affiliates Employee Handbook" and "all services performed by the Personnel will be performed as employees of Associates exclusively for Wal-Mart Texas." (Emphasis added.) Thus, the sentence in the Agreement that Wal-Mart Texas "commits to hiring and supervising" operators and employees does not demonstrate that Wal-Mart Texas had the right to supervise Personnel vis-a-vis Associates, with whom it contracted to direct and control the Personnel, or that it actually supervised or directed the Personnel provided by Associates. Based on the briefing and the evidence presented to the Magistrate Judge, the Court concludes that she reached the correct conclusions.

In its objections, Wal-Mart Texas also cited new authority and the deposition of Saul Garcia to argue that it was an employer because Peter was trained at the TLE and Wal-Mart Texas provided the tools and/or machines for him to work. However, Defendants had not relied on any part of the deposition during the summary judgment briefing. The Magistrate Judge was not obligated to read through the summary judgment record to look for evidence not cited by the parties. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) ("A district court's decision on summary judgment is largely controlled by what the parties presented. If somewhere in a record there is evidence that might show a dispute of material fact, the district court needs to be pointed to that evidence as opposed to having to engage in an extensive search."); *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996) ("Rule 56, therefore, saddles the non-movant with the duty to "designate" the specific facts in the record that create genuine issues precluding summary judgment, and does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition.").

Because this argument and related briefing was raised for the first time in the objections, the Court must determine whether to allow Wal-Mart Texas to supplement its briefing and evidence, and will consider it as part of that analysis. Thus, the Court finds that, absent supplementation, the Magistrate Judge correctly determined the motions for summary judgment.

## B. Whether to Allow Supplementation and a Successive Motion for Summary Judgment?

The factors that the Court should consider are: (1) the moving party's reasons for not originally submitting the evidence; (2) the importance of the omitted evidence to the moving party's case; (3) whether the evidence was previously available to the non-moving party when it responded to the summary judgment motion; and (4) the likelihood of unfair prejudice to the non-moving party if the evidence is accepted.

The motion to supplement seeks leave to submit the following new evidence: (1) the July 2007 Franchise Agreement between the Corporation and Wal-Mart Texas; (2) a January 1997 Master Employment Services Agreement between the Corporation and Associates, in which the parties agree that Associates will be the exclusive provider for all personnel necessary to operate the Corporation and its affiliates; (3) "exemplars" of the Corporation's Human Resources policies; (4) a Parental Guarantee[11]; and (5) a demonstrative flow-chart depicting the relationships between Associates, Wal-

---

[11] In support of its joint employer argument, the Corporation included evidence that it guaranteed the workers' compensation obligations of Associates. However, the TWCA requires a self-insured subsidiary such as Associates to obtain a parental guarantee. TEX. LAB. CODE § 406.068 ("If an applicant for a certificate of authority to self-insure is a subsidiary, the parent organization of the applicant must guarantee the obligations imposed by this chapter."). Thus, this is not evidence that the Corporation provided workers' compensation insurance to Associates' employees or was their employer for purposes of the TWCA.

Mart Texas, and the Corporation.[12]

Defendants argue that this "evidence demonstrates that through the operation of a Master Employment Services Agreement and a Franchise Agreement, the actual management of Mr. Calvasina's work performance and workplace conditions was shared by the Corporation and Wal-Mart Texas in a manner that fully justifies application of the exclusivity bar to both of these entities." Motion (docket no. 119) at 5-6. Defendants argue that the Court should not "draw an artificial line between" Associates and the other two Wal-Mart entities because it would ignore "the established interrelatedness among these three entities for purposes of the management of Mr. Calvasina's performance and work environment." *Id.* at 8. Defendants assert that the evidence shows the Wal-Mart entities "together fulfilled the role of 'employer' contemplated by the TWCA for purposes of its exclusivity provisions" and there is no evidence that Wal-Mart has ever utilized its corporate structure to avoid paying workers' compensation benefits to any injured employees of its operating entities.

Thus, in their motion to supplement, Defendants expand their argument from that made in their motion for summary judgment or even in the objections. Instead of focusing on the right to control the details of the work (a borrowed servant/right-to-control analysis), they now focus on shared management (a joint or co-employer analysis). In addition, the evidence and arguments concerning control/management by the Corporation are new, as the Corporation previously argued only that it was entitled to the exclusive remedy defense because it paid Peter's workers' compensation benefits.

---

[12] Plaintiff objected to Defendants' motion for leave to supplement, arguing that the documents were tardily submitted to the Court, and that they should have been produced with initial disclosures and in response to requests for production served in 2009, but were not.

In their second motion for summary judgment, Defendants rely on the evidence they attached to their motion for leave to supplement the record, the Excess Workers Compensation Policy issued to the Corporation, the Declaration of Jason Salmons, Senior Strategy Manager for the Operations Team of the Corporation, and the Declaration of Kim Dodd, Senior Manager of Legal Entity Accounting.  Salmons states that the Corporation prepares and distributes policies and procedures to associates working for all Wal-Mart operating entities, including Wal-Mart Texas, through an intranet referred to as "the WIRE," that the Corporation is also responsible for modifying or amending these policies to address any changes or particular needs with regard to store-level operations, and that these policies and procedures address the day-to-day responsibilities, operations, training, and management of all associates. Dodd states that associates assigned to Wal-Mart Texas are paid wages by Associates with funds provided by the Corporation, these expenses are then allocated to the operating entity to which they are assigned, along with a service fee, and that, "[t]hrough this allocation, Wal-Mart Texas, along with Wal-Mart Stores, Inc.[,] bear financial responsibility for wages, workers' compensation premiums and costs."

Defendants argue that the detailed policies and procedures prepared by the Corporation pursuant to which Peter's work was performed, in addition to a series of intercompany agreements detailing the level and extent of managerial and supervisory oversight, establish that: (1) the Corporation drafted the policies and procedures that controlled Peter's day-to-day employment; (2) the Corporation trained store-level employees concerning the application and implementation of these policies; (3) the Corporation was financially responsible for the wages paid to Peter; (4) the Corporation's funds were utilized to pay the premiums for Peter's workers' compensation

insurance[11]; and (5) the Corporation directly guaranteed the workers' compensation benefits promised to (and received by) Peter.

    <u>1. Reasons why the evidence was not previously produced/whether the evidence was available at the time the Magistrate Judge considered the motions for summary judgment</u>

    In explaining why the evidence was not previously presented, Defendants assert that the evidence was not intentionally withheld.  The Corporation states that it was first named as a defendant on March 7, 2011, and that at the time summary judgment papers were being prepared and filed with the Magistrate Judge, counsel (who is outside counsel) and the client representative with whom counsel was working, "despite reasonable efforts, had not located the Master Employment Services Agreement or Franchise Agreement relating to Wal-Mart Stores, Inc."  Counsel states that, through a separate inquiry through the tax department, the documents were located, it was determined that they would be relevant, and counsel took immediate steps to supplement the record and produced these documents to opposing counsel.

    The Court finds that Defendants have not provided a valid excuse for failing to produce the evidence initially.  When Plaintiff first moved for summary judgment, the Corporation responded only by arguing that it was entitled to the exclusive remedy defense because it paid Peter's worker's compensation benefits.  It did not argue that it controlled Peter's work or was an employer of any sort.  Thus, although the Corporation explains that it did not previously locate the documents that it now wishes to introduce to show it was a joint employer, the fact remains that the Corporation relied on a flawed legal argument that did not implicate the issue of control, and thus the fact that

---

    [11] Previously, Defendants had provided evidence and argument that Wal-Mart Texas indirectly paid Peter's wages and benefits, including workers' compensation.  There was no argument or evidence that the Corporation indirectly paid the wages and benefits.

it did not have evidence of control is irrelevant.  This is not a case of being unable to locate documents in support of an argument, but of seeking a second bite at the apple by asserting a new argument.

Further, the Franchise Agreement and the Employee Handbook are specifically referenced in the Services Agreement between Wal-Mart Texas and Associates, and were clearly relevant to the motions pending before the Magistrate Judge.  The Franchise Agreement, Employee Handbook, and Master Services Agreement between Associates and the Corporation should have been easily located. Even if they were not, at no time did Defendants ask for more time to locate these documents or move to continue consideration of Plaintiff's motion for summary judgment under Rule 56.  Further, the Affidavits submitted with the second motion for summary judgment were created, and thus this evidence would have been available at the time the motions were pending before the Magistrate Judge.

As should be clear from the detailed procedural history, Defendants have changed their argument significantly from that originally presented to the Magistrate Judge.  In the opening brief on summary judgment, the reply brief, the objections, the motion to supplement, and the second motion for summary judgment, Defendants continually change their argument and seek to introduce new arguments and evidence.  The time for making arguments and presenting evidence was when the motions were pending before the Magistrate Judge.   The Corporation failed to even file objections to the Magistrate Judge's report and recommendation. Further, Defendants failed to move to supplement the record for several months.  These factors weigh very heavily against allowing

Defendants to supplement the record and file a second motion for summary judgment.[12]

### 2. Importance of the Evidence/Prejudice to Plaintiff

The Court finds that the evidence is important because it could potentially raise a fact issue on Defendant's affirmative defense sufficient to survive summary judgment, but that allowing Defendants to present new legal arguments and evidence would be unduly prejudicial to Plaintiff because it greatly complicates the factual and legal landscape at this late stage in the case and the arguments are inadequately briefed.

With regard to Wal-Mart Texas, the evidence (specifically the deposition of Saul Garcia) could have raised a fact issue on control even under the borrowed servant analysis espoused by Defendants at summary judgment.  His deposition indicates that the store manager, assistant managers, shift managers, and others at the store were also all employed by Associates and leased to Wal-Mart Texas.  It appears that, to the extent they were supervising Peter it was on behalf of Wal-Mart Texas or both Wal-Mart Texas and Associates.  Garcia also indicated that these employees provided orientation and training to Peter, including any training about the tire rack.  And Wal-Mart

---

[12] Defendants provide no explanation or excuse for why they did not assert their joint employer argument previously.  Ironically, Plaintiff cited a Texas court of appeals case recognizing such a theory in her motion for summary judgment– *Ingalls v. Standard Gympsum*, 70 S.W.3d 252 (Tex. App.–San Antonio 2001, pet. denied).  Though Plaintiff cited it for the proposition that co-members of an LLC could not claim the § 408.001 defense simply by virtue of the fact that they were co-members, the court also separately held that two entities (the LLC and its member) could be joint employers entitled to share a single workers' compensation policy held by the member under the circumstances of the case.  However, Defendants urged the Court to disregard this case as not controlling.  In his dissent in *Wingfoot v. Alvarado*, a case cited by Defendants in their briefing, Justice Enoch also noted that *Ingalls* portrayed "an actual 'co-employer' circumstance" because two companies joined together to operate one facility.  *Wingfoot*, 111 S.W.3d at 152 (Enoch, J., dissenting).  Justice Enoch went on to state that Texas courts have recognized co-employers, including in the workers' compensation context, and cited a number of cases.  However, Defendants failed to timely raise their joint employer argument.

Texas asserted that it provided the tools and equipment necessary for Peter's work.  Thus, had Wal-Mart Texas cited this evidence to the Magistrate Judge, it could have raised a fact issue on whether it was Peter's employer under the right-of-control test.  As the Texas Supreme Court noted in *Wingfoot* and again in *Garza*, a temporary employee, like a leased employee, who is "injured while working under the direct supervision of a client company is conducting the business of both the general employer [the temporary employment agency] and that employer's client" such that the injured employee should be able to pursue workers' compensation benefits from either." *Garza*, 161 S.W.3d at 475 (quoting *Wingfoot*, 111 S.W.3d at 143).

Importantly, however, *Garza* held that *both* employers must have workers' compensation coverage – "[i]f either has elected not to provide coverage but still qualifies as an 'employer' under the Act, then that employer should be subject to common law liability without the benefit of the defenses enumerated in section 406.033."  Even if it raised a fact issue on control, Wal-Mart Texas still failed to show that it had workers' compensation insurance under the *Garza* standard briefed in the original motion for summary judgment.  The only evidence of workers' compensation insurance for Wal-Mart Texas was the Excess Insurance Policy issued to the Corporation.  The Court has held that Wal-Mart Texas provided no evidence that it was covered by that policy.  And even if Wal-Mart Texas was covered under the Excess Insurance Policy as a subsidiary of the Corporation, it failed to prove it had any primary insurance.

In *Port Elevator*, the Texas Supreme Court held that, with respect to temporary employees, "a client company can avail itself of the exclusive remedy provision against claims by a temporary employee if either: (1) the client company was a named insured on the staffing company's policy; (2) the staffing company obtained a separate workers' compensation policy for the client company;

37

or (3) the client company obtained its own workers' compensation policy." *Port Elevator*, 358 S.W.3d at 242.  The Texas Supreme Court also held that the leasing company and the client could not share the leasing company's insurance without complying with the specific requirements of the SLSA.  Wal-Mart Texas and Associates have not complied with the SLSA, and Wal-Mart Texas's alleged coverage under the Excess Insurance Policy is insufficient to satisfy *Garza* or *Port Elevator*. Thus, under an application of the *Garza* line of cases, Plaintiff would still be entitled to summary judgment against Wal-Mart Texas.  Accordingly, even if the Magistrate Judge had considered Wal-Mart Texas's evidence of control, summary judgment against it would still have been proper.

The *Garza* line of cases involves multiple, unrelated employers, however.  The real essence of what Defendants are arguing in their motion to supplement and their second motion for summary judgment is a joint-employment relationship, under which they all are protected by the same workers' compensation insurance policy (or at least Wal-Mart Texas must share in another entity's insurance since there is no evidence that it carries any primary insurance).  They also argue that control is not a required factor to create an employment relationship.  This is certainly a different argument from that originally presented to the Magistrate Judge, and presents a very complex and novel issue.  Although asserting a joint employer argument, Defendants do not provide any legal authority concerning true joint employers or under what circumstances joint employers may invoke the workers' compensation exclusivity defense.

As noted, the parties and the Magistrate Judge relied exclusively on the Texas Supreme Court cases involving temporary employment agencies.  These cases employ a borrowed servant analysis because that makes sense in that context – the doctrine was developed in cases in which an employee of one employer temporarily becomes the employee of a second employer because the second

employer controls the employee's work.

The Texas Supreme Court has also cited the right-of-control test in determining whether a leased worker is the employee of the client company. In *Texas Workers' Compensation Insurance Fund v. Del Industrial, Inc.*, 35 S.W.3d 591 (Tex. 2000), the Court stated, in the context of leased employees, that "[g]enerally, courts determine whether a workers' compensation insurance policy covers a worker's injury by determining whether the subscribing company is the worker's employer under the right-of-control test." *Id.* at 595 (citing *Thompson v. Travelers Indem. Co.*, 789 S.W.2d 277, 278 (Tex. 1990)). In *Thompson*, the Court stated that "[t]he test to determine whether a worker is an employee or an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the employee's work. . . . The employer must control not merely the end sought to be accomplished, but also the means and details of its accomplishment as well." *Id.* at 278. "Examples of the type of control normally exercised by an employer include when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of the work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result." *Id.* at 278-79. However, the Court was not considering who was an employer of leased workers for purposes of the exclusive remedy defense; it was deciding whether the client company had to pay premiums for the leased workers.

This case involves leased employees, not temporary employees. As recognized by the SLSA in its definition of "staff leasing services,"[13] leasing relationships are generally more long-term in

---

[13] "Staff leasing services" means an arrangement by which employees of a license holder are assigned to work at a client company and in which employment responsibilities are in fact shared by the license holder and the client company, the employee's assignment is intended to be of a long-term or continuing nature, rather than temporary or seasonal in nature, and a majority of the work force at a client company worksite or a specialized group within that work force consists of

nature and often involve a shared right of control over the employee.  The Court has not located a

case in which the Texas Supreme Court has expressly considered if and when two entities may be

true joint employers for purposes of asserting the exclusivity defense under the common law, but

existing authority indicates that joint control of some sort is necessary.[14]

The Texas Supreme Court has addressed joint ventures in the borrowed servant context for

purposes of third-party tort liability – *see, e.g.*, *Battaglia v. Alexander*, 177 S.W.3d 893 (Tex. 2005).

In a joint venture, all entities engaged in the venture may be jointly and severally liable for the

conduct of their employees because they share control over the details of the employee's work.

*Heritage Housing Dev. Inc. v. Carr*, 199 S.W.3d 560 (Tex. App.–Houston [1st Dist.] 2006, no pet.).

To establish a joint venture, a party must show (1) commonality of interest, (2) an agreement to share

profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the

venture.  *Id.*  Though this situation seems to be relatively analogous to what Defendants argue,

Defendants have not argued that they are a joint venture and have not cited any such authority, nor

have they submitted proof of an agreement to share profits and losses.

It is certainly possible that the Texas Supreme Court would recognize the concept of such

joint venture/joint employers in the workers' compensation context.  In *Wingfoot*, the Court noted

that the temporary agency remained an employer without exercising control over the details of the

---

assigned employees of the license holder."  TEX. LAB. CODE § 91.043(14).

[14] The court of appeals in *Garza v. Excel* actually held that the temporary agency and the client company were dual employers or co-employers because they had joint control over the employee's work.  *Garza v. Exel Logistics, Inc.*, 100 S.W.3d 280, 284 (Tex. App. – Houston [1st Dist.] 2002) ("The parties agree that in this case, the issue is whether Interim and Exel are dual employers, not whether Garza is a borrowed servant.").  However, the Texas Supreme Court did not address this issue, and applied the traditional borrowed servant language in its opinion.

work that gave rise to the injury because it exercised more general controls such as hiring, firing, placement, paying wages, providing training and benefits, and providing some degree of on-site supervision.  Thus, both employers exercised control and supervision over the employee.  Some courts of appeals that have considered this issue have applied a shared right-of-control test.  *See Garza v. Exel Logistics*, 100 S.W.3d 280, 284 (Tex. App.–Houston [1st Dist.] 2002); *Brown v. Aztec Rig Equip.*, 921 S.W.2d 835 (Tex. App.–Houston [14th Dist.] 1996, writ denied) (recognizing a joint employer relationship for purposes of the workers' compensation exclusive remedy defense when the agreement between the leasing company and client expressly stated that they were co-employers and they exercised joint control over the employee).[15] Also, as noted, the San Antonio court of appeals recognized that joint employers could share one entity's insurance and were co-employers for purposes of the workers' compensation exclusivity bar.  *Ingalls v. Standard Gypsum*, 70 S.W.3d 252 (Tex. App.–San Antonio 2001, pet. denied).  Thus, there is support for recognizing joint employers for workers' compensation purposes, though Defendants have not cited a single one of these cases in their briefing.

Nevertheless, assuming the Texas Supreme Court would recognize common-law joint employers for purposes of workers' compensation, allowing Defendants to assert their new joint employer argument at this late stage in the case is unduly prejudicial because it greatly complicates

---

[15] The *Brown* court noted that there was little case law discussing coemployers in the workers' compensation context.  This is due, in part, to the fact that most courts had not yet recognized that there could be multiple employers for workers' compensation purposes.  Accordingly, most decisions focused on which single entity was the employer, not whether more than one entity was an employer, and most courts applied a borrowed servant analysis.

The court also noted that the SLSA, which was not in effect at the time of *Brown's* injury, recognizes co-employer relationships for purposes of workers' compensation in staff leasing arrangements.  *Id.* at 846.  It did not consider how the terms of the SLSA might affect the common law, however.

the case both factually and legally.

The Wal-Mart entities are attempting to argue that they are joint employers, despite the plain language of the Master Services Agreements. The Services Agreement between the Corporation and Associates expressly states that "[a]ll Personnel assigned to WMSI or its affiliates shall at all times be deemed employees of Associates, not WMSI or such affiliates." Docket no. 119-1 § 1.06. This indicates that Defendants did not intend to create a joint employer relationship. Further, the Master Services Agreement between Associates and Wal-Mart Texas states that "[a]ll services performed by the Personnel will be performed as employees of Associates exclusively for Wal-Mart Texas," not Wal-Mart Texas and the Corporation. Docket no. 87-1 (Ex. B) § 1.02. Thus, Defendants' argument contradicts their own contractual agreements regarding joint employer status.

Further, it is not clear what degree of control would be required to conclude that two entities are joint employers for purposes of workers' compensation since the Texas Supreme Court has not spoken on this issue. It may be that, like for a joint venture, shared management is sufficient. Or, it may be that joint control over the employees is required. If joint control is required, it is unclear whether the defendants must exercise control over the employee in general or specifically with regard to the work.

If a joint right to control is required, the Court has already concluded that the relevant contracts assign the right of direction and control to Associates, and not to Wal-Mart Texas or the Corporation. "A contract between two employers providing that one shall have the right of control over certain employees is a factor to be considered, but it is not controlling." *Exxon v. Perez*, 842 S.W.2d 629, 630 (Tex. 1992). This is especially true "where the contract is 'a mere sham or cloak designed to conceal the true legal relationship between the parties.'" *Id.* "Where the right of control

prescribed or retained over an employee is a controverted issue, it is a proper function for the fact-finder to consider what the contract contemplated or whether it was even enforced."  *Id.*

Even if the contract is only a factor, the fact-finder must consider who exercised control.  As Plaintiff notes, it remains unclear whether Peter was leased to the Corporation in addition to Wal-Mart Texas, or leased only to Wal-Mart Texas.  *See* Defendants' Motion for Summary Judgment (docket no. 127) at 4 ("The Master Employment Services Agreement identifies Wal-Mart Stores as the recipient of personnel necessary to operate Wal-Mart Stores [the Corporation], while Wal-Mart Associates, Inc. is identified as the entity responsible for providing personnel to Wal-Mart Stores."). Further, the Corporation has not cited any legal authority in which the Texas Supreme Court has recognized that one who promulgates policies and procedures governing a workplace, without any evidence of direct supervision or enforcement, exercised control sufficient to be considered an employer.  There is no evidence that the Corporation directly supervised Peter.  Moreover, although the Corporation asserts that its policies are detailed, it did not provide any actual policies or discuss the specificity of the policies and procedures issued by the Corporation, whether they govern the means and details of work or simply the ends sought to be accomplished, or the extent to which store managers have leeway or discretion to modify or abandon the policies.  *Cf. Union Carbide v. Smith*, 313 S.W.3d 370, 377 (Tex. App.–Houston [1st Dist.] 2009, pet. denied) ("We conclude that the fact that Union Carbide provided certain specifications and materials for the projects to be completed on its premises does not constitute evidence that Union Carbide retained or exercised any control over the manner in which Oliver performed his work.").

The Salmons Affidavit states that "the intranet also includes guidelines on the substantive operations of particular departments within the retail stores, including Tire Lube Express," but

43

provides no information regarding what those guidelines include, whether Peter saw them, or whether anyone enforced them at the store in question.  The Salmons Affidavit states that store-level managers have considerable discretion on how best to implement and enforce the policies and procedures depending upon the particular needs of their store. Nor does the Corporation present evidence that it controlled when and where Peter would begin and stop work, the amount of time spent on particular aspects of the work, which tools and appliances he should use to perform the work, or the physical method or manner of accomplishing the end result.

Even if an applicable standard could be determined and even if the new evidence raises a fact issue on whether Associates, Wal-Mart Texas, and the Corporation are joint employers, this raises an additional layer of complex, unsettled legal issues concerning whether they may share the workers' compensation self-insurance held by Associates (or at least whether Wal-Mart Texas may, if the Corporation is in fact self-insured).  The Texas Supreme Court has been clear in the context of temporary employers, that multiple, unrelated employers who become co-employers under the borrowed servant rule must nevertheless each be expressly covered by workers' compensation insurance to invoke the exclusive remedy defense.  And as noted by the Texas Supreme Court, the Legislature has also expressly stated when two employers may share the benefits of a single insurance policy.

Defendants recognize one such instance – section 406.123 of the Texas Labor Code – though they concede it does not apply.  Section 406.123(a) provides that "[a] general contractor and a subcontractor may enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor" and such an agreement "makes the general contractor the employer of the

44

subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws." TEX. LAB. CODE § 406.123. Section 406.123(c) provides the same rule for motor carriers and owner operators.

Of particular relevance here, the SLSA also permits a staff leasing company and the client to share a workers' compensation policy under very specific circumstances. For entities covered by the SLSA, the client company and leasing company are coemployers to the extent of the leasing company's election to provide workers' compensation insurance, and thus both entities may be covered by the leasing company's insurance.

Assuming Associates' Personnel are leased to Wal-Mart Texas and the Corporation, the contracts here do not comply with the SLSA requirements. The SLSA expressly states that, to be co-employers for workers' compensation purposes, the parties must share the right of direction and control over employees assigned to a client's worksite. TEXAS LAB. CODE § 91.032(a)(1). They must also contractually agree that the leasing company and client share "the right to hire, fire, discipline, and reassign the assigned employees" and share "the right of direction and control over the adoption of employment and safety policies and the management of workers' compensation claims, claim filings, and related procedures." *Id.* § 91.032(a)(4), (5). The Services Agreements do not establish such a shared right of control. Thus, the agreements do not comply with the SLSA.[16]

---

[16] The SLSA also requires that workers' compensation insurance premiums be based on the client company's experience rating, and the Texas Supreme Court has emphasized this requirement. *Garza*, 161 S.W.3d at 478-79. This requirement is included to prevent client companies from being able to avoid paying premiums based on their own experience rating by insuring them through the staff leasing company's insurance. *See generally Tex. Workers' Comp. Ins. Facility v. Personnel Servs.*, 895 S.W.2d 889 (Tex. App.–Austin 1995, no writ). The Services Agreements are silent as to which experience rating applies, and thus may violate the SLSA. However, it is not clear whether or how this SLSA requirement would apply in the self-insurance context.

The Texas Supreme Court has stated that "the specificity with which [the SLSA] addresses workers' compensation strongly indicates that a leasing company cannot accomplish under the general workers' compensation provisions of the Labor Code what it is prohibited from accomplishing under the Staff Leasing Services Act, which is also part of the Labor Code." *Id.* at 479.[17]   The Court further stated that "[t]he specificity and details of the Staff Leasing Services Act negate the notion that parties can, by private agreement, decide that a single policy naming only one insured will cover one company's employees while they are working under the direct control of another company, or that the experience rating of one and not the other will determine who the named insured will be." *Id.*; *see also id.* ("Other provisions of the Labor Code strongly suggest that two employers cannot agree that one workers' compensation policy will name only one employer but cover both.").   Thus, absent a statute permitting shared insurance, the Texas Supreme Court has indicated that each purported employer must be expressly covered by a policy of insurance or be self-insured as directed by § 401.011(44).   But the Court has never considered the issue in the context

---

[17] The Court even posed the following hypothetical:

> Suppose, for example, that the leasing company and the client decided not to expressly agree in a written contract that the client shares the right of direction and control of employees, but in fact, the parties contemplated that they would share actual control and did so.  The Staff Leasing Services Act would not apply.  Did the Legislature intend to allow the leasing company and its client nevertheless to agree that the leasing company would obtain a policy for itself, based on its own experience rating, and that such a policy would also cover leased employees while working under the actual control of the client?  The answer is no, this is not contemplated by the Labor Code.  The specificity and details of the Staff Leasing Services Act negate the notion that parties can, by private agreement, decide that a single policy naming only one insured will cover one company's employees while they are working under the direct control of another company, or that the experience rating of one and not the other will determine who the named insured will be.

*Garza*, 161 S.W.3d at 479.

of true joint employers, as opposed to multiple, unrelated employers.

Further complicating the issue is the fact that the leasing situation in this case is expressly excluded from the SLSA's regulation. It was amended in 1997 to expressly exempt this situation. *See* H.B. 1465, 75th Leg. (R.S.).  The SLSA states that "staff leasing services" does not include "the provision of services that otherwise meet the definition of 'staff leasing services' by one person solely to other persons who are related to the service provider by common ownership."  *Id.* "Common ownership" is defined as "a direct or indirect ownership in excess of 33 1/3 percent" and "includes ownership through subsidiaries or affiliates."  No party has provided briefing on the legislative intent behind excluding such relationships.  There is no indication whether this exclusion was intended to permit such related entities to share workers' compensation insurance without complying with the SLSA.

Moreover, even if the Texas Supreme Court were to recognize joint employers who could share a single workers' compensation insurance policy, the Texas Supreme Court has also consistently emphasized that any such arrangement based on common-law principles may not violate the rule against splitting workforces.  "It has long been the law in Texas that an employer may not split its workforce by providing workers' compensation insurance coverage to some workers while leaving others without coverage."  *Del*, 35 S.W.3d at 596.  In *Port Elevator-Brownsville, LLC v. Casados*, 358 S.W.3d 238, 242 (Tex. 2012), the Court held that this rule continues to govern except where "statutes and the common law provide certain limited exceptions."  The SLSA is one such exception, but it does not apply.  If Wal-Mart Texas and the Corporation are joint employers of the Associates Personnel but also have employees other than the Personnel who are not covered by workers' compensation insurance, their sharing of Associates' workers' compensation insurance

47

could violate the rule against splitting their workforces.

In sum, there is very little guidance for the Court to evaluate Defendants' new joint employer argument, and Defendants do not adequately brief the issue. It is unclear what degree of control would be required to establish a joint employer relationship for workers' compensation purposes. Further, it is unclear when joint employers would be permitted to share workers' compensation insurance. Existing Texas Supreme Court authority in the context of multiple, unrelated employers generally indicates that a party seeking the benefit of the § 408.001 defense must be expressly covered by workers' compensation insurance and may not have the benefit of another company's insurance other than through the express mechanisms established by the Legislature. The Legislature has provided specific guidelines for when entities may be co-employers for purposes of sharing workers' compensation insurance, including in the staff leasing context through the SLSA. Defendants point to no statutory provision that would permit them to share insurance. Thus, if the Court were to consider Defendants' arguments, it might very well conclude that Wal-Mart Texas has raised a fact issue on whether it was Peter's joint employer, but that it did not have workers' compensation insurance, leaving it without the benefit of common-law defenses. *See Garza*, 161 S.W.3d at 475 (noting that, if a defendant is an employer but does not have workers' compensation insurance, the employer would be foreclosed from asserting certain defenses, including contributory negligence).[18]

As should be evident, a myriad of unsettled legal issues arise if the Court were to consider

---

[18] This could also be true if the Corporation is not self-insured. If the Corporation is self-insured and eventually succeeded on the joint employer argument, it would be entitled to the § 408.001 defense. However, as has been discussed, the Corporation has waived its joint employer argument.

Defendants' belated joint employer analysis.  Further, Defendants do not sufficiently brief any of the issues.  Moreover, the degree of uncertainty and the resulting increase in the complexity of this case at this very late stage is unduly prejudicial to Plaintiff.

Thus, although the supplemental evidence and arguments are important, it is unclear whether, upon full briefing and consideration, they would raise a fact issue sufficient to survive Plaintiff's motion for summary Judgment.  But even if it does raise a fact issue, the Court finds this factor to be greatly outweighed by Defendants' lack of diligence and by the potential prejudice to Plaintiff.  Defendants have been dilatory in formulating and presenting their legal argument and evidence, without excuse.  After receiving the recommendation from the Magistrate Judge to grant summary judgment against them on their defense, Defendants changed course and presented a new legal argument and new evidence.  Scant precedent exists in this area, and the Defendants' arguments would have to be decided without clear guidance from the Texas Supreme Court and with a myriad of relevant factors whose import is unsettled, requiring further briefing and possibly further discovery.  Discovery is closed and trial is set less than three months away, at which time the case will already be three years old.

For all these reasons, the Court denies the motion to supplement.  The Court further strikes that portion of the second motion for summary judgment that pertains to the exclusive remedy defense.

## Conclusion

The Court accepts the Magistrate Judge's recommendation to grant Plaintiff's motion for summary judgment as to the Corporation and Wal-Mart Texas and to deny Wal-Mart Texas's motion as to the § 408.001 affirmative defense.

As the case was originally briefed and presented to the Magistrate Judge, Defendants had to establish that they were Peter's employers by showing that they had a right to control or actually controlled the details of his work, and that they had workers' compensation insurance. While Wal-Mart Texas might very well have controlled Peter's work, it presented only conclusory assertions that it had control and presented no evidence. The only evidence of a right of control was the Services Agreement, which assigned the right of direction and control to Associates. Wal-Mart Texas provided no evidence that it actually directed, controlled, or supervised Peter's work. Thus, it failed to raise a fact issue on whether it was Peter's employer.

Further, Wal-Mart Texas failed to raise a fact issue on whether it had workers' compensation insurance. The only policy provided was the Excess Insurance Policy issued to the Corporation. Even if the policy covered existing subsidiaries, which was disputed, Wal-Mart provided no evidence that it was an existing subsidiary covered by the policy. Even if this policy covered Wal-Mart Texas, it is only an *excess* insurance policy as opposed to a primary insurance policy.

Thus, summary judgment against Wal-Mart Texas was appropriate. Even considering the arguments and evidence of control raised for the first time in the objections, which could have raised a fact issue on whether Wal-Mart Texas was Peter's employer, Wal-Mart Texas still failed to provide evidence that it had workers' compensation insurance. Thus, the objections fail to change the result.

With regard to the Corporation, it provided no argument or evidence that it was Peter's employer. The only argument or evidence was that it may have paid Peter's workers' compensation benefits under the Excess Insurance Policy, which is not evidence that it was Peter's employer. Accordingly, summary judgment against the Corporation was appropriate. The Corporation did not file objections to the Report and Recommendations.

50

With regard to the motion to supplement and second motion for summary judgment, Defendants' belated joint employer argument and evidence may be sufficient to raise a fact issue on their § 408.001 defense, though it is not clear.  But Defendants waived this argument by failing to raise it when Plaintiff moved for summary judgment and by failing to adequately brief it once raised. The Court finds that Defendants' motion to supplement should be denied and the successive motion for summary judgment on this issue should be stricken because Defendants provided no valid excuse for failing to raise this argument or present this evidence previously.  Further, the evidence at most raises a fact issue on the asserted joint employer relationship (especially given that the Services Agreement negates a joint employer relationship), yet implicates numerous complex legal issues concerning when entities may be joint employers for purposes of sharing workers' compensation insurance that Defendants fail to recognize or brief.   Wal-Mart Texas introduced no evidence that it was covered by any primary workers' compensation insurance, and thus even if it jointly employed Peter, significant questions remain regarding whether it may claim the § 408.001 defense based on another entity's self-insurance.  If the Corporation is not self-insured, the same concerns exist.  And, even if the Corporation is self-insured such that the issues regarding sharing workers' compensation and split workforces are not implicated, the Corporation's dilatoriness in raising the joint employer argument, the lack of citation to any legal authority concerning the elements necessary to establish a joint employer relationship in the workers' compensation context, and the fact that the evidence at most raises a fact issue, is sufficient to deny the motion to supplement.

Accordingly, Plaintiff's Motion for Partial Summary Judgment (docket no. 82) is GRANTED.  Defendant Wal-Mart Texas's Motion for Summary Judgment (docket no. 88) is DENIED.  The Motion to Supplement and Provide New Legal Authority (docket no. 119) is

51

DENIED.

The Court further strikes that portion of Defendants' second motion for summary judgment (docket no. 127) that pertains to the exclusive remedy defense.  The Court will issue a ruling on the no-duty portion of the second motion for summary judgment (docket no. 127) in a separate order.

It is so ORDERED.

SIGNED this 28th day of September, 2012.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE