**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LINDA CALVASINA, Individually and as | § | |
| Next Friend of PETER CALVASINA, an | § | |
| Incapacitated Person, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | Civil Action No.  SA-09-CA-1024-XR |
| v. | § | |
| | § | |
| WAL-MART REAL ESTATE BUSINESS | § | |
| TRUST, WAL-MART STORES TEXAS, | § | |
| LLC, WAL-MART STORES, INC., and | § | |
| RHC/SPACEMASTER CORPORATION, | § | |
| and MORGAN MARSHALL INDUSTRIES, | § | |
| | § | |
| *Defendants*. | § | |

**ORDER**

On this date, the Court considered the Motion for Summary Judgment filed by Defendant

Wal-Mart Stores, Texas, LLC ("Wal-Mart Texas") and Wal-Mart Stores, Inc.'s ("the Corporation")

(docket no. 127).

**I. Background**

On February 24, 2009, Peter Calvasina was working as a Service Writer/Greeter in the Tire

Lube Express ("TLE") of the Wal-Mart store located at 6703 East Leslie Road, in San Antonio,

Texas.  While working on the upper level of a tire rack system, Peter fell from the platform and was

severely injured.  Store video shows that a tire, Peter, and the guardrail from the platform fell from

the tire platform.  It is believed that Peter was tossing or dropping a tire down from the mezzanine

at the time of the fall.

The record indicates that Wal-Mart store workers such as Peter are generally employed by

1

Wal-Mart Associates, Inc. ("Associates"), and Associates leases these employees to other Wal-Mart entities such as Wal-Mart Texas.  Associates leased Peter to Wal-Mart Texas to work in the particular Wal-Mart store in which he was injured.  Wal-Mart Texas operated this store pursuant to a Franchise Agreement with Wal-Mart Stores, Inc. ("the Corporation") and a Lease.

Defendants previously argued that they were Peter's employers and thus were entitled to assert the exclusive workers' compensation remedy defense.  Plaintiff argued that Defendants were not Peter's employers because they did not exercise control over the details of the work giving rise to the injury.  The Court granted Plaintiff's motion for summary judgment on the workers' compensation exclusive remedy defense.  In this motion, Defendants argue that if they did not exercise the control necessary to make them employers, then they owed Peter no duty.  Thus, the Court must determine whether Defendants owed Peter a duty for which they can be liable under a negligence cause of action.

Defendants' motion recognizes that a defendant may have a duty to provide a safe workplace if it had actual control or a right of control over the specific aspect of the safety and security of the premises that led to plaintiff's injury.  Docket no. 127 at 12.  However, they argue that "[t]he Texas Supreme Court has held sufficient control exists only if a defendant has 'the right to control [the employee] "in the details of the work to be performed"'' – language *identical* to that applied and required by the Court in determining employer status for purposes of exclusivity under the TWCS." *Id.* at 12-13 (emphasis in original) (citing *Exxon v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993)).  Accordingly, Defendants argue, if Defendants did not have the ability to control the specific details of Calvasina's work that led to his injury, then that conclusion "necessarily negates the existence of a legal duty owed by Defendants to Plaintiff." *Id.* at 13.  However, Defendants' motion significantly

misapprehends the *Exxon v. Tidwell* decision and Texas law regarding duty.

Defendants incorrectly argue that, if they did not exercise employer-like control, then they can owe Peter no duty.  But, as will be discussed, duties may arise from certain types of supervisory control that is less than employer-like control, and control over the premises or creation of a dangerous condition also gives rise to certain duties.  The Court will therefore discuss the applicable duties under Texas law.

## II. Texas Law on Duty

"The existence of a legal duty is a question of law for the court to decide, and that determination is made from the facts surrounding the occurrence in question."  *Tri v. J.T.T.*, 162 S.W.3d 552, 563 (Tex. 2005).  Because Wal-Mart Texas is the premises operator and contracted with Associates, Peter's employer, Wal-Mart Texas has the overlapping duties of a premises operator and a general contractor to the employee of an independent contractor.[1]  *See Williams v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997).

The exact relationship between the Corporation and Peter is unclear.  The Corporation is contractually tied to Wal-Mart Texas through the Franchise Agreement and also to Associates through the Master Services Agreement.  Thus, it seems that the general contractor/independent contractor relationship is the most analogous, considering that Plaintiff relies on the Franchise Agreement to show that the Corporation retained control over all store employees, including those

---

[1] Plaintiff refers to Wal-Mart Texas as a "property owner" or "premises owner" because the duties are generally the same as that of a property or premises operator or occupier.  However, the Court will refer to Wal-Mart Texas as the "premises operator" to avoid confusion because Chapter 95 of the Texas Civil Practice & Remedies Code imposes a special duty/liability standard for property owners.  *See* Tex. Civ. Prac. & Rem. Code ch. 95 ("Property Owner's Liability for Acts of Independent Contractors and Amount of Recovery.").  No party has argued that Chapter 95 applies.

leased to Wal-Mart Texas by Associates.

Under Texas law, the duties owed by premises operators and general contractors to employees of independent contractors are generally the same. *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 291 (Tex. 2004). The nature of the duty turns on whether the injury arose from activities or a premises defect. *See id.*

## A. Negligent Activities

With respect to activities, a premises operator or general contractor who retains a right to control an independent contractor's work may be liable for negligence in the exercise of that control. *Khan*, 138 S.W.3d at 292. The duty of reasonable care imposed is commensurate with the control retained over the independent contractor. *Hoechst-Celanese v. Mendez*, 967 S.W.2d 354, 355 (Tex. 1998) ("the more detailed the employer's control over the independent contractor's work, the greater is the employer's responsibility for any injuries that result").

Control over the means, methods, and details of the work gives rise to a duty to ensure that the work is performed in a safe manner. *Id.* at 356 ("if the employer retains control over the 'operative detail of doing any part of the work,' like the control a master retains over a servant, then any negligence of the contractor is imputed to the employer under the law of agency"). Plaintiff has eschewed any duty that would arise from employer-like control over the means, methods, and details of Peter's work. Plaintiff has argued that Peter was employed solely by Associates, and thus for purposes of determining any applicable duties owed by Wal-Mart Texas or the Corporation, the Court will consider only those duties owed by non-employers or that do not involve employer-like controls.

Section 414 of the Restatement (Second) of Torts and the Texas Supreme Court recognize

4

a level of supervisory control that is less than control over the details of the work (and thus would not rise to a master/servant relationship) but is enough that the independent contractor is not entirely free to do the work in his own way.  *Mendez*, 967 S.W.2d at 356 ("The duty under section 414 is directed to employers [of independent contractors] who 'retain a control less than that which is necessary to subject him to liability as a master.'"); RESTATEMENT (SECOND) OF TORTS § 414 cmt. a ("The employer may, however, retain a control less than that which is necessary to subject him to liability as a master.").

A duty may arise if the defendant retains such a right of supervision that the contractor is not entirely free to do the work in his own way; this includes retaining "the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others."  *Mendez*, 967 S.W.2d at 356.  However, "[i]t is not enough that [the employer of the independent contractor] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations."  *Id.* (quoting the Restatement). Courts have referred to this level of control as retained supervisory control.[2]

Absent an exercise of control, a premises operator or general contractor has no duty to ensure that an independent contractor and its employees perform their work in a safe manner.  *Koch Ref'g Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999).  Control may be proved in two ways: (1) by evidence of a contractual agreement that explicitly assigns to the premises operator the right to control and (2)

---

[2] The Undersigned notes that he previously joined in an opinion concluding that the focus on "retained control" has failed to provide either consistent or equitable results and that a "thorough reconsideration of this area is in order."  *Lee Lewis Construction, Inc. v. Harrison*, 70 S.W.3d 778, 787 (Tex. 2002) (Phillips, J., concurring).

by evidence that the premises operator actually exercised control.  *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002).

**B. Premises Defects**

One who is in control of the premises may also be liable for premises defects.  Premises defects are divided into two categories: (1) those existing when an independent contractor enters the premises or that are created through some means unrelated to the activity of the injured employee or his employer and (2) those created by the independent contractor's work. *See Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002); *Williams v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997).  With respect to the first category, a premises operator has a duty to inspect the premises and warn of concealed hazards that it knows or should have known about.  *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 215 (Tex. 2008)*; Shell Oil v. Khan*, 138 S.W.2d 288, 295 (Tex. 2004).

With respect to the second category, in which the independent contractor creates the dangerous condition, the premises operator has no duty unless it retains a right to control the work that created the defect. *See Bright*, 89 S.W.3d at 606.  The rationale for this rule is that a general contractor or premises operator normally has no duty to ensure that an independent contractor performs its work in a safe manner.  *Williams*, 952 S.W.2d at 527.  Whether the general contractor or premises operator owes a duty to warn an independent contractor's employees of dangerous conditions arising out the independent contractor's work, and the scope of that duty, depends on the same control analysis described above for negligent activity claims.  *Id.* at 528.

**C. *Exxon v. Tidwell***

With regard to the failure to maintain a safe working environment claim against the Corporation, the parties cite to *Exxon v. Tidwell*, 867 S.W.2d 19 (Tex. 1993), as establishing the

6

relevant duty standard.  In that case, the Texas Supreme Court considered whether a landlord oil company owes a duty of ordinary care to protect a tenant service station's employees from the criminal acts of third parties.  The Court held that whether such a duty exists depends on whether the oil company possessed a specific right of control over the safety and security of the station.  The Court rejected application of the traditional test of right of control over general operations, and held that the focus should be on whether the oil company had the right to control the alleged security defects that led to the injury.

Exxon v. Tidwell establishes the test for negligent security litigation. *Smith v. Foodmaker, Inc.*, 928 S.W.2d 683, 686 (Tex. App.–Fort Worth 1996, no writ) ("*Exxon Corp.* outlines the test in negligent security litigation").  As noted, *Tidwell* involved a landlord/tenant relationship and the duty of a landlord to protect against criminal acts of third parties against the tenant's employees.  In another negligent security case, the San Antonio Court of Appeals held that *Tidwell* could be applied when an employee attempts to hold someone other than his employer but with contractual ties to both the land the employer liable for negligence in failing to prevent harm inflicted by a third party. *Brooks v. NCS*, 897 S.W.2d 898 (Tex. App.–San Antonio 1995, no writ).  But the court noted that "the harm suffered . . . was not related to some condition on the premise which owners or occupiers were actually, contractually or impliedly required to maintain, but rather occurred because a business was operated therein."

*Tidwell* was extended in *Morris v. Scotsman Industries, Inc.*, 106 S.W.3d 571 (Tex. App.–Fort Worth 2003, no pet.), to a situation in which an employee of a subsidiary company injured on the job sued the parent corporation, alleging negligence in maintaining a safe workplace.  The plaintiff argued that the parent company was liable for its retained control over the subsidiary's

7

safety operations.   In applying *Tidwell*, the court of appeals focused on whether the parent corporation had actual control or a right to control the subsidiary's forklift safety operations, which allegedly led to the hazardous condition that injured the plaintiff.

The Texas Supreme Court has primarily cited *Tidwell* in negligent security cases involving criminal acts of third parties.   In doing so, it has analyzed the duty to maintain a safe workplace established by *Tidwell* in the context of established law regarding duties owed by a premises owner or employer of an independent contractor.   *See,* e.g., *Shell Oil v. Khan*, 138 S.W.3d 288 (Tex. 2004)(looking to established independent contractor law concerning negligent activity and premises defect to determine whether defendant had control over workplace safety). The Court has also cited *Tidwell* in ordinary personal injury premises defect cases for the propositions that "[f]or the general contractor to be liable for negligence, its supervisory control must relate to the condition or activity that caused the injury" and "the 'right to control' rule also applies to premises defect cases." *Williams v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997).   These cases indicate that *Tidwell* should be applied in conjunction with the other established caselaw governing the duties owed by premises operators and general contractors to the employee of an independent contractor.

**D. Duties owed by persons not in control of the premises**

In addition to the law establishing the duties owed to employees of independent contractors by entities other than his employer, Texas also has established duties concerning when a third party may nevertheless be liable for dangerous conditions on the property.   *See County of Cameron v. Brown*, 80 S.W.3d 549 (Tex. 2002) (an entity may be liable for premises defects if it assumed control over and responsibility for the premises, even if it is not an owner/occupier); *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52 (Tex. 1997) (noting that one not in control of the property may owe a duty to

8

make the premises safe if he agreed to make safe a known dangerous condition or if he created the dangerous condition).

**E. Control**

All tests for determining duty in this context focus on who had the right of control or was responsible for the condition or activity giving rise to the harm in determining who owes a duty and the scope of that duty.  Associates – as Peter's employer – had the duty to ensure that Peter performed his work in a safe manner, and Associates had the primary duty to provide a safe workplace.  Wal-Mart Texas and the Corporation could also assume a duty if they retained or exercised sufficient control over the premises or the work, and the scope of that duty is commensurate with the scope of control exercised or retained.

### III. Analysis

**A. Wal-Mart Texas**

Plaintiff alleges that the tire rack system maintained and controlled by Wal-Mart Texas posed an unreasonable risk of harm to Peter and others, that Wal-Mart Texas reasonably should have known of this risk and owed Peter a duty to exercise ordinary care to inspect and make safe such dangerous condition or to give adequate warnings of the condition.  *Id.* ¶ 30.  Plaintiff alleges that the following negligent acts were the proximate cause of Peter's injury: (1) failing to inspect and maintain the work area to discover the dangerous condition; (2) failure to post warnings to Plaintiff of the unsafe condition of the working area; (3) failure to provide safety equipment in the area in question; (4) failure to provide necessary and proper procedures on its premises; and (5) failure to inspect and make safe the dangerous tire rack system or to give adequate warnings of the dangers in the system.  *Id.* ¶ 31.

9

Although the allegations in the Complaint implicate both control over the premises and control over Peter's work (failing to provide safety equipment, failing to provide procedures), Plaintiff's brief argues only that Wal-Mart Texas is liable under the first category of premises defects claims – those in which the hazard/condition did not arise through the work activity of the subcontractor/invitee.  To establish liability under the first category of premises defects claims, Plaintiff must prove that: (1) a concealed condition of the premises created an unreasonable risk of harm to Peter; (2) the condition did not arise through the work activity of Peter or Peter's employer; (3) Wal-Mart Texas knew or reasonably should have known of the condition; (4) Wal-Mart Texas failed to take reasonable steps to remedy the condition or warn the invitee about the danger; and (5) the failure was a proximate cause of the injury.  Thus, to establish a duty, Plaintiff must show that there was a concealed defect that presented an unreasonable risk of harm, that was not caused by Peter or his employer's work, and of which Wal-Mart Texas had actual or constructive knowledge.

As to the first element, Plaintiff asserts that the tire rack system was defective and posed an unreasonable risk of harm.  Plaintiff points to a number of factors to establish this point: the guardrail where Peter fell was too low and lacked an intermediate rail (in violation of federal safety standards); the guardrail was installed upside down; the guardrail was installed on the outer vertical member as opposed to the inner vertical member; the guardrail was missing a lock clip on one side, and lock clips secure railings to the equipment; and the tire rack system was missing over 65 safety lock clips.  Because Wal-Mart Texas has failed to argue or brief whether the defects were concealed, the Court will not decide this issue.

With regard to the second element, whether the defect was caused by Peter or Peter's employer's work activity, both parties fail to adequately address this element.  Defendants argue that

"there is no evidence the condition that caused the harm (*e.g.* a missing safety pin) existed prior to Mr. Calvasina's work there."   Plaintiff contends that the defective rack pre-exists Peter's presence because he had only worked at the store for eight months.   However, the relevant inquiry is not whether the defect existed before the injured worker entered the premises, but whether his or his employer's work caused the defect:

> The first category includes those defects that exist on a premises when a business invitee enters for business purposes or are created through some means unrelated to the activity of the injured employee or his employer.  When dangerous conditions do not arise through the independent contractor's work activity, the owner or general contractor has a duty to inspect the premises and warn about the dangerous conditions of which the owner or general contractor knows or should know. . . .  The second category of premises defects includes those defects an independent contractor, or its injured employee, create by its work activity.

*Griffin v. Shell Oil Co.*, Civ. A. No. 01-09-01089,__ S.W.3d__, __ (Tex. App.–Houston [1st Dist.] 2011, no pet.).  Thus, Wal-Mart Texas would have a duty under this category of premises defect claims if the alleged defects that posed an unreasonable risk of harm were not caused by Peter or Associates' work.

Because both Plaintiff and Defendants mistakenly focus on whether the hazards existed prior to Peter's time at the store as opposed to Peter's employer, they have not briefed whether the hazards were caused by Peter's employer's work.  For example, if Associates' personnel working in the TLE moved the guardrail to facilitate dropping tires from the mezzanine (as hypothesized by Plaintiff's expert), then Wal-Mart Texas would not owe a duty to warn of the defect.  However, Plaintiff points to the deposition of Saul Garcia, the store manager, who states that, to his knowledge, the guardrail had not been moved from its original installation point when the tire rack was originally installed in 2000.  Garcia had only worked at the store since October 2008, a few months before the accident,

but he was testifying as the Rule 30(b)(6) representative. Although slim, this is sufficient evidence to raise a fact issue concerning whether Associates' work was the cause of the defective installation of the guardrail.[3] At trial, however, Plaintiff will need to establish that Associates was not responsible for the conditions posing an unreasonable risk of harm.[4]

With regard to Wal-Mart Texas's actual or constructive knowledge of the defect, Plaintiff has raised a fact issue as to whether the defective condition existed for a sufficient period to impose constructive knowledge. Garcia's deposition indicates that the defective installation occurred in 2000 and thus existed for almost nine years, a sufficient time to impose constructive knowledge.[5]

Because Wal-Mart Texas may owe a duty to Peter in its capacity as premises operator, the motion for summary judgment, which argues only that Wal-Mart Texas can owe Peter no duty if it is not his employer, is denied.

---

[3] No party discusses the cause of the missing lock clip on the guardrail. If the lock clip simply fell off due to normal use, akin to deterioration of the premises over time, the entity in control of the premises/equipment (Wal-Mart Texas) would appear to have the duty. *See CMH v. Daenen*, 15 S.W.3d 97 (Tex. 2000).

[4] Plaintiff has not argued that Wal-Mart Texas retained sufficient supervisory control over Associates' work such that it could owe a duty under the second category of premises defects. Nor has Plaintiff argued that Wal-Mart Texas retained sufficient supervisory control over Associates' work such that it would liable for failing to provide safety equipment or have adequate "procedures" or under a negligent activity theory.

[5] Again, however, there is no discussion regarding when the lock clip went missing. Plaintiff also argues that Wal-Mart Texas had actual knowledge that the tire racks posed an unreasonable risk of harm because it was aware of other incidents of associates falling from tire racks. Plaintiff relies on documents provided by Wal-Mart Texas during discovery in response to requests for production concerning other tire rack-related injuries. However, the fact that Wal-Mart Texas produced these incident reports during discovery does not mean that Wal-Mart Texas had actual knowledge of these incidents before Peter's injury. The incident reports show that the incidents occurred in stores in Wisconsin, South Carolina, Tennessee, Virginia, and Oklahoma. Thus, there is no indication that Wal-Mart Texas would have received these reports. In addition, Plaintiff fails to show that the defects or dangers posed by these racks were the same as those alleged to exist here.

12

**B. The Corporation**

Plaintiff alleges that the Corporation was negligent in failing to maintain a safe working environment. Docket no. 149 at 10. Plaintiff's Complaint asserts that, on the date of Peter's fall, the Corporation was committed to providing and maintaining a safe working environment for individuals such as Peter, that it employed a team of safety professionals responsible for the development and implementation of safety initiatives for the store, and that these professionals failed to develop or implement any safety initiatives for the safe operation or use of the tire mezzanine from which Peter fell. Fourth Am. Complaint ¶ 25. Further, Plaintiff alleges that the Corporation failed to communicate hazards associated with the operation or use of the tire mezzanine and failed to implement safety training specific to the tire mezzanine. *Id.* ¶ 45.

In the briefing, Plaintiff relies on *Exxon v. Tidwell* and argues that the Corporation retained "actual control over the safety and security policies for the tire rack system in the TLE" and thus incurred a duty to keep the tire rack safe for personnel. Plaintiff acknowledges that she must show that the Corporation had a right to control the specific aspect of the safety and security of the premises that led to Peter's injury, but points to a number of factors to establish the Corporation's control over workplace safety: the Corporation's "expertise" concerning the "special design" of retail buildings and equipment/equipment layout; control over "minute details of the Stores' environment"; its commitment to providing a safe working environment; its continuing advisory relationship relative to the business operation, including promulgation of initiatives and standards for a safe premises; its contractual right to dictate the standards for equipment and facility maintenance; its selection, purchase, and "ultimate say" over the equipment and fixtures necessary to operate the store; its development of "standards, specifications, procedures, and techniques" for the store; its

13

creating and providing training programs and operating manuals for the retail business; and its employment of a team of safety professionals responsible for developing and implementing safety initiatives for the working environment.

1. <u>Control over Workplace Safety</u>

Plaintiff appears to argue that the Corporation has taken on the broad and general obligation to ensure workplace safety at the Wal-Mart Store.  The franchise agreement assigns control over operations to Wal-Mart Texas, though the Corporation maintains "a continuing advisory relationship" that includes providing operating manuals with the "standards, specifications, procedures, and techniques of the franchise system."  The agreement also assigns to Wal-Mart Texas the responsibility to "maintain the business premises and all equipment, fixtures, and facilities in such manner as required by law, and conform with [the Corporation's] standards of health, cleanliness, and neatness."  Wal-Mart Texas agrees to allow the Corporation to inspect the business premises at any reasonable time.  The agreement further states that the Corporation "shall provide such management assistance to [Wal-Mart Texas] for the preparation of its budget and operations as [the Corporation] deems advisable, with the understanding that [Wal-Mart Texas] shall retain ultimate operational, financial, administrative and supervisory responsibility for such activities." However, Wal-Mart Texas "shall adopt and use [the Corporation's] standards with respect to merchandising, employee recruitment, training, equipment, and facility maintenance and sanitation." The agreement further requires the Corporation to provide or make available an in-store training program for all store employees and Wal-Mart Texas "shall train and periodically re-train all store employees using the training aids made available by [the Corporation]."

The franchise agreement does not specify who has control over workplace safety, and does

14

not give the Corporation a contractual right to control workplace safety. Nothing in the franchise agreement explicitly assigns to the Corporation "the specific right over the safety and security of the premises." *Exxon v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993) ("the court's inquiry must focus on who had specific control over the safety and security of the premises"). In addition, nothing in the Master Employment Services Agreement gives the Corporation a right to control workplace safety.

Rather, the franchise agreement assigns control over operations and "health standards" to Wal-Mart Texas. It expressly states that "franchisee shall retain ultimate operational, financial, administrative and supervisory responsibility for" budget and operations. In *Shell Oil v. Khan*, 138 S.W.3d 288 (Tex. 2004), the dealer agreement provided that La Sani was an independent contractor and Shell had no right to control operations, "subject only to [La Sani]'s performance of the obligations of [the] Agreement." *Id.* at 292. The Texas Supreme Court construed the contract as indicating that La Sani had control of all operations, including security-related matters, unless other provisions of the contract clearly indicated to the contrary.

Plaintiff does not point to any provision of the contract that clearly indicates to the contrary. Though the franchise agreement requires Wal-Mart Texas to "conform with [the Corporation's] standards of health, cleanliness, and neatness," and to adopt and use the Corporation's standards "with respect to merchandising, employee recruitment, training, equipment, and facility maintenance and sanitation," the focus is on the Corporation's general right of control over operations in relation to the quality and standards of service rather than a right to control safety and training of Wal-Mart Texas employees. *See Townsend v. Goodyear Tire & Robber Co.*, 249 Fed. App'x 327, *1 (5th Cir. 2007).

And although the franchise agreement requires Wal-Mart Texas to conform to the

Corporation's standards of health, training, maintenance, and sanitation, such requirements do not give rise to an unqualified duty to ensure workplace safety. *Mendez*, 967 S.W.2d at 357-58 ("Celanese's insistence that Mundy observe and promote compliance with federal laws, general safety guidelines, and other standard safety precautions did not impose an unqualified duty of care on Celanese to ensure that Mundy employees did nothing unsafe."); *Dow Chem. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2004) (contract requiring independent contractor to comply with all safety rules and regulations of Dow and all applicable safety laws and building codes did not give Dow a right to control).  Rather, these implicate only the narrow duty of care not to increase the risk or severity of harm. *Mendez*, 967 S.W.2d at 358 ("Celanese owed Mundy's employees a duty that any safety requirements and procedures it promulgated did not unreasonably increase, rather than decrease, the probability and severity of injury.").

Plaintiff has not shown that the franchise agreement gave the Corporation the right to control workplace safety or gave the Corporation control over the means, methods, or details of the work at Wal-Mart Texas sufficient to impose an unqualified duty to ensure workplace safety (and such a position would conflict with Plaintiff's position that the Corporation did not exercise the type of control sufficient to make it an employer).  Merely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work is not enough to establish liability. *Townsend v. Goodyear Tire & Robber Co.*, 249 Fed. App'x 327, *2 (5th Cir. 2007) (citing *Koch Ref'g Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999)).  The contract does not provide for the Corporation to train employees on safety practices and does not provide it with the control or supervision of the specific methods and means of the operations that caused the injury. *Townsend*, 249 Fed. App'x at *2.  Thus, Plaintiff has not established a contractual right to control

16

safety.

The Court next considers whether Plaintiff has established that the Corporation actually controlled workplace safety sufficient to give rise to a duty to Peter.  Plaintiff points to a Risk Control Resource Manual issued by the Corporation as part of a "Safety Program" which states,

> Wal-Mart Stores, Inc. is committed to providing and maintaining a safe working and shopping environment for our customers and associates.  Wal-Mart Stores, Inc. employs a team of safety professional who are responsible for the development and implementation of safety initiatives for the various operational formats within the Company.

Although this expresses the Corporation's commitment to maintaining a safe working environment, it does not give the Corporation control over workplace safety.

Plaintiff also cites the Corporation's recognition in a safety bulletin that it and Wal-Mart Texas "have a responsibility to maintain the safest possible environment for our associates to work in."  But again that does not mean that the Corporation assumed the right to control all aspects of safety for Personnel working for Associates, such as Peter.  The Resource Manual states that (1) the Corporation intends to comply with all local, state, and safety federal safety requirements, and/or appropriate industry standards; (2) the Corporation requires its associates to participate in and successfully complete an orientation process that includes, but is not limited to, training to comply with the following OSHA standards: Hazardous Communications, Bloodborne Pathogens, Fire Extinguishers, Emergency Action Plans; (3) upon successful completion of the orientation process, the associate will receive additional training, including safety training specific to their job requirements.

The Corporation also requires each facility to have a Safety Team made up of hourly associates who represent various departments within the facility and a salaried member of

17

management.  The Safety Team acts as a liaison between hourly associates and management to ensure safety objectives are being met and to ensure that safety standards established by regulatory agencies (OSHA) are monitored on a routine and consistent schedule.

In *Dow v. Bright*, however, the Texas Supreme Court concluded that the fact that Dow issued various safety manuals and standards that the independent contractor's employees were required to read and follow, required the independent contractor to send its employees to a third party safety meeting, had a safety incentive program, had an on-site safety representative, and implemented a safe work permit system were insufficient to establish actual control over workplace safety.  Thus, Plaintiff has not established that the Corporation had a general right to control workplace safety such that it owed Peter a duty to ensure a safe workplace and/or that his work was performed in a safe manner.

2. Control over Training

As noted, the Franchise Agreement requires Wal-Mart Texas to adopt and use the Corporation's standards with respect to training its employees and states that Wal-Mart Texas "shall train and periodically re-train all store employees using the training aids made available" by the Corporation.  In a subsection entitled "Training," it states that the Corporation "agrees to make personal training facilities available to franchisee, to furnish an operation manual, to make promotional and other recommendations."

However, in *Shell Oil v. Khan*, the Texas Supreme Court held that a dealer agreement that stated that the Dealer "shall have the responsibility to train Dealer's employees, and shall have available and utilize training equipment, materials and programs as made available by Shell from time to time for this purpose," coupled with evidence that Shell distributed a training manual to all

18

dealers and required them to take a training course was legally insufficient to show that Shell had

a right to control the dealer's employee's training.  138 S.W.3d at 293.

In this case, like in *Shell*, the franchise agreement requires Wal-Mart Texas to train

employees using the Corporation's materials. There apparently were no training materials related to

the use of the tire rack or tire rack safety.   The Risk Control Manual issued by the Corporation

provides that, "[u]pon successful completion of the orientation process, the associate will receive

additional training, including safety training specific to their job requirements."  Plaintiff provides

no evidence that the Corporation was contractually responsible for providing this training or that it

assumed actual control of providing this training.  In such circumstances, absent evidence that the

Corporation knew that Wal-Mart Texas routinely failed to train its employees and that the

Corporation had a contractual right to intervene to correct it, a contract requiring Wal-Mart Texas

to conduct training does not create liability for the Corporation if it did not.[7]

Further, there is no evidence that the Corporation's materials or its insistence that Wal-Mart

Texas train its employees increased the risk of injury to Peter.  *Id.* at 294; *see also Dow Chem. v.

Bright*, 89 S.W.3d 602, 607 (Tex. 2002) (if defendant exercises control by requiring subcontractor

to comply with its safety procedures, it owes the employees only the narrow duty to ensure that its

safety requirements and procedures do not unreasonably increase the probability or severity of

injury).  Failure to implement a safety rule or require additional training is insufficient to impose a

duty in this case.  *Bright*, 89 S.W.3d at 609 (holding that Dow's failure to implement a safety rule

---

[7] There is evidence, however, that Peter did receive such training.  Saul Garcia testified that employees such as Peter would have received training from their TLE supervisors.  He also testified that Associates, including Peter, were verbally informed not to throw tires down from the platform, and that Peter's training plan acknowledgment indicates he received training from his TLE supervisor regarding safe work practices in the TLE.

detailing how to secure pipe was not actual control and did not implicate the narrow duty of care not to promulgate safety regulations that unreasonably increase the risk or severity of injury).

To the extent the Corporation retained a right of supervisory control, there is no evidence that the Corporation directed the manner in which TLE personnel would retrieve tires from the tire rack, that it knew of or approved of unsafe methods of retrieving tires from the tire rack by TLE personnel, or that it knew of or approved the manner in which Peter retrieved the tire from the platform. *See Lee Lewis Constr. v. Harrison*, 70 S.W.3d 778 (Tex. 2002) (defendant retained sufficient control over fall protection system used by independent contractor because it observed and expressly approved of the use of faulty fall-protection system).  Accordingly, the Court finds that Plaintiff has failed to establish that the Corporation exercised control over training sufficient to trigger a duty other than the narrow duty to ensure that the training materials it did promulgate did not increase the risk of harm, and Plaintiff has failed to show that the Corporation's actions increased the risk of harm.

3. Control Over the Tire Rack

The party with the right to control the premises/dangerous condition or who created a dangerous condition on the property may have a duty commensurate with the degree of control exercised or retained.  Plaintiff argues that the Corporation controlled the selection, design, and maintenance of the tire rack, creating a duty to Peter to maintain the tire rack in a safe condition.  To succeed on a premises defect claim against the Corporation, Plaintiff must show that the Corporation exercised control over the premises/tire rack and must also establish the elements of a premises defect claim. *See Williams v. Olivo*, 952 S.W.2d 523, 529 (Tex. 1997).

Although Plaintiff acknowledges that Wal-Mart Texas owned and controlled the tire rack,

Plaintiff argues that the Corporation also retained control over the tire rack.  Plaintiff points to the fact that the Corporation had "the supreme authority to select the fixtures and equipment that went into the TLE" and authored operating standards for the TLE, including a specific policy for inspection of the tire rack.

*Selection of the Tire Rack*.  With respect to the initial selection of the tire rack, Plaintiff argues that the Corporation had control over the specific design of equipment and equipment layout, selected the equipment for the store, and purchased the equipment. Thus, Plaintiff asserts the Corporation had control over the selection and layout of the tire rack.  If the Corporation required Wal-Mart Texas to use this particular tire rack and knew or should have known that the tire rack was defective or dangerous, those facts could trigger a duty.  But there is no evidence that the Corporation's initial selection of the tire rack triggered a duty.

Plaintiff complains that the tire rack was defectively installed, but there is no evidence that the Corporation had control over the way the equipment was installed.  Plaintiff does not cite to any evidence that the Corporation directed or approved the actual installation or configuration or became aware at any point that the tire rack was defectively installed.  *See Dow*, 89 S.W.3d at 609 ("[W]e have never concluded that a general contractor actually exercised control of a premises where, as here, there was no prior knowledge of a dangerous condition and no specific approval of any dangerous act.").

Plaintiff contends that the Corporation "apparently . . . failed to exercise reasonable care in directing suppliers of the tire storage rack in the TLE."  However, the franchise agreement provides that the Corporation will select and purchase equipment, will "direct the supplier . . . to ship the same directly to the destination indicated by franchisee, and to take any other action that franchisee may

reasonably request in connection with the purchase services pursuant hereto," and that title never vests in the Corporation.  There is nothing in the contract giving the Corporation the right to control installation of the equipment and no evidence that the Corporation supervised the installation or approved it.  The franchise agreement states that Wal-Mart Texas must maintain the equipment as required by law and that Wal-Mart Texas retains ultimate operational and supervisory responsibility. Although the Corporation retained the right to inspect the premises, a right to inspection is insufficient to establish control.  There is no evidence that the Corporation was involved in or had the right to control the installation of the tire rack or that it at any time learned of the defective installation before Peter's accident.[8]  Plaintiff does not establish that the Corporation created the dangerous condition simply by selecting the tire rack and requiring its use in the TLE.

*Maintenance of the Tire Rack*.  The Franchise Agreement expressly assigns to Wal-Mart Texas the duty to "maintain the business premises and all equipment, fixtures, and facilities in such manner as required by law, and conform with franchisor's standards of health, cleanliness, and neatness."  The Lease also provides that Wal-Mart Texas owns all fixtures and equipment and must maintain and repair them.  Saul Garcia, the store manager and 30(b)(6) representative, testified that Wal-Mart Texas controlled the tire rack and must maintain it.

Plaintiff does not appear to argue that the Corporation took on the responsibility to maintain and inspect the tire rack, either by contract or by actually doing so.  However, Plaintiff argues that the Corporation exercised sufficient control over Wal-Mart Texas's maintenance of the tire rack

---

[8] Plaintiff argues that the Corporation had actual knowledge of other falls from tire racks, but there is no evidence that any of these racks involved the same defects. Further, there is no indication that Wal-Mart Texas ever requested to use a different tire rack system and was refused by the Corporation.

sufficient to incur a duty. The Franchise Agreement requires Wal-Mart Texas to "adopt and use [the Corporation's] standards with respect to . . . equipment, and facility maintenance and sanitation." No evidence is provided regarding what the Corporation's standards with respect to equipment and facility maintenance are.   As with other safety regulations, however, requiring a contractor to conform with such regulations gives rise to only the narrow duty of care not to increase the risk of harm.  *See Peterson v. RES America Constr.*, Civ. A. No. 13-10-238, 2011 WL 2582560 (Tex. App.–Corpus Christi, June 30, 2011, no pet.) (fact that general contractor issued a "Site Passport" that required, among other things, that "[a]ll climbing and lifting equipment must be inspected every day before use and defective equipment replaced immediately" was not a right to control job-site safety but gave rise only to a narrow duty not to increase the risk).

There is no evidence that Wal-Mart Texas could only conduct such maintenance as specifically directed by the Corporation, such that the Corporation's failure to instruct regarding maintenance of the tire racks would increase the risk.  The "equipment best practices" included in a TLE operations manual issued by the Corporation included: "repair or replace broken equipment immediately"; ensure the Equipment Maintenance Checklists are completed on all equipment as needed; "Hardlines Assistant Manager should follow up on the checklist to ensure compliance and correction action is taken"; "The Market Technical Specialist should check the condition of equipment on each store visit."[9]  Further, Plaintiff acknowledges that, before Peter's injury, the Corporation instructed Wal-Mart Texas via email to safety team leaders to inspect the tire racks as part of a periodic inspection and to correct any "exceptions."  *See* Pl. Ex. E (Safety Mailbox Week

---

[9] There is no information regarding who the Market Technical Specialist is and whether they are an employee of the Corporation.

23).[10]  The entire provision reads:

> Please ensure the following are in place: Pinch pin safety devices (fixture request #PP-500) are in place where the beams come together to help hold beams in place. Ensure in TLE stores, tire racks are included in this periodic inspection.  Exceptions must be corrected immediately to prevent possible Associate injury.

It is unclear whether "pinch pin safety devices" are the same thing as lock clips.

Plaintiff asserts that this policy was defective because it did not define what the "periodic inspection entails" or what the inspector should look for, and does not identify what "exceptions" are or how to correct them.  Plaintiff argues that this vague and deficient policy increased the risk of harm and directly resulted in a hazard to Peter.  However, the fact that the policy was not as specific as it could have been does not mean that it increased the risk of harm over having no policy at all.  And there is no evidence that this or the other policies issued by the Corporation increased the risk of harm.

If a party with retained supervisory control is aware that its independent contractor routinely ignores applicable federal guidelines or standard safety policies and has a contractual right to intervene to stop it, it may owe a duty.  *Khan*, 138 S.W. at 293 & n.19.  However, Plaintiff has not demonstrated that the Corporation was aware that Wal-Mart Texas was not adequately inspecting or maintaining the tire racks or that lock clips were missing and not being replaced, and has not demonstrated that the Corporation had a right to intervene to enforce its maintenance requirements even if it did know.  Accordingly, Plaintiff fails to demonstrate that the Corporation owed a duty or that the Corporation's standards increased the risk of harm.

---

[10] The Court presumes that this Safety Mailbox was distributed by the Corporation to all store Safety Team Leaders.

4. <u>Negligent Undertaking</u>

Plaintiff's brief also devotes a substantial amount of argument to a claim that the Corporation "was negligent in its undertaking to select and approve equipment and fixtures for the TLE, including the tire storage rack at the Store."  Plaintiff asserts that when the Corporation undertook to provide and maintain a safe working environment at the store, it could not do so negligently/in a manner than increased the risk of harm to plaintiff.  Plaintiff relies on Restatement (Second) of Torts § 324A (the "Good Samaritan Doctrine"), which states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 324A (1965).[11]  Plaintiff asserts that the Corporation is liable under (a) and (b).

However, the Court has already concluded that Plaintiff has failed to demonstrate that the Corporation's actions increased the risk of harm to Peter.  *See Page*, 701 S.W.2d at 836 (Kilgarlin, J., concurring) (under § 324A, a plaintiff must show that the defendant's negligence created a worse condition than if it had never undertaken the activity).   Although the Corporation selected the tire rack, there is no evidence that it was responsible for installing or maintaining the tire rack.  In addition, the Court has concluded that the Corporation did not assume a general duty to ensure that

---

[11]Texas courts have adopted Section 324A of the Restatement. *See Lowe's Home Ctrs., Inc. v. GSW Marketing, Inc.*, 293 S.W.3d 283, 291 (Tex. App.–Houston [14th Dist.], pet. denied).

employees of independent contractors performed their work in a safe manner or to maintain the store

in a safe condition.  The duty to maintain the premises and equipment was assigned to Wal-Mart

Texas in the franchise agreement and the lease, and the Corporation did not agree or undertake to

maintain the premises or the tire rack in safe condition.  It at most retained supervisory control, but

Plaintiff failed to show that it negligently exercised that control.

## IV. Conclusion

Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN

PART.  The motion is granted with regard to all claims against the Wal-Mart Stores, Inc. ("the

Corporation") because Plaintiff fails to establish that the Corporation owed a duty to Peter.  The

motion is denied with respect to Plaintiff's premises defect claim against Wal-Mart Texas.

It is so ORDERED.

SIGNED this 5th day of November, 2012.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE